GRANT *et al. v.* McCULLOUGH *et al.*

(*Nashville*, December Term, 1953.)

Opinion filed July 23, 1954.

CORNELIUS SUMMERS, of Nashville, for appellants.

E. C. YOKLEY, of Nashville, for appellees.

Mr. Justice Tomlinson delivered the opinion of the Court.

City Ordinance No. 51-456 purported to amend the zoning ordinance of the City of Nashville so as to change the lot of Mrs. Grant from a Residential "C" Zone to Commercial "A" Zone. The lots on both sides of Mrs. Grant's property and to the rear are zoned Residential "C". Mrs. Grant and the City of Nashville have appealed from the decree of the Chancellor holding that this ordinance is unconstitutional in that it gives to Mrs. Grant privileges "not extended to others in the same neighborhood similarly situated, and that the action taken was not in furtherance of any general plan or scheme of zoning, and, therefore, constituted 'spot zoning.'"

Appellants' insistence is that this amendatory ordinance was enacted "for the general welfare of the people in Mrs. Grant's neighborhood"; hence, is a valid enactment.

Mrs. Grant's lot fronts 50 feet on the north side of Boscobel Street, as do the other lots thereon. Prior to the enactment of this amendatory ordinance, all lots on the north side of Boscobel Street and those to the rear thereof were zoned Residential "C", except that the lot on the corner of the intersection of Boscobel Street with South 10th Street is zoned Commercial "A". This is in keeping with the fact that all lots in this neighborhood

fronting on South 10th Street are zoned Commercial "A". Lots No. 933 and 931 in this block to the west of Mrs. Grant's lot and lots No. 927, 925, 923 and 921 to the east of her lot are zoned Residential "C". The amendatory ordinance leaves all these lots Residential "C", changing only to Commercial "A" Mrs. Grant's lot No. 929. Across from Mrs. Grant's lot on the south side of Boscobel Street four lots running east from South 10th Street are zoned Commercial "A". The others thereon are Residential "C". They are not changed by this amendatory ordinance. So it is that no lot other than the one belonging to Mrs. Grant is affected by this ordinance.

It is glaringly apparent from the physical situation detailed that the Chancellor had no escape from the conclusion that the ordinance was not enacted in furtherance "of any general plan or scheme of zoning". Those same facts force the conclusion that mercantile stores were already available to the neighborhood. Therefore, the change of this one parcel of land from residential to commercial cannot fairly be held to have been a change for the general welfare of the people in Mrs. Grant's neighborhood, as insisted in her behalf. The situation then poses the question as to why the city fathers enacted this unusual ordinance.

Mrs. Grant is a widow well up in years. She has the responsibility of supporting her invalid son who can help himself in this respect if there can be legally conducted on this lot No. 929 belonging to his mother, it being the place where they live, the commercial business of selling merchandise generally classed as varieties and notions. With this in mind, Mrs. Grant appealed to the alderman representing her particular ward. The planning commission thereafter disapproved of the change on the ground

that it was "spot zoning". Nevertheless, the city fathers enacted the ordinance. No basis for this action can be conjured other than that it emanated from a strong desire to help this good lady.

■ Notwithstanding the laudable purpose which inspired the ordinance, the Chancellor was compelled, reluctantly, to find that it was an ordinance enacted only for the personal benefit of Mrs. Grant and her son. It was inconsistent with the general ordinance on the subject, and gave to Mrs. Grant a privilege withheld by the general law from others in a situation like unto that of Mrs. Grant. On principle, there is no escape from the conclusion that the ordinance contravened Article XI, Sec. 8 of the Tennessee Constitution.

We find no Tennessee decision on the exact point involved. However, the number of decisions which might be cited from other jurisdictions holding such an ordinance invalid are quite numerous. The Chancellor cites, and quotes from, a number of these. We borrow from that exceedingly well-considered opinion only two or three cases to illustrate the point.

In *Rodgers* v. *Village of Tarrytown*, 302 N. Y. 115, 96 N. E. (2d) 731, it was said:

"'Spot zoning' is process of singling out small parcel of land for use classification totally different from that of surrounding area, for benefit of owner of such property and to detriment of other owners, and, as such, is very antithesis of planned zoning."

In *Parker* v. *Rash*, 314 Ky. 609, 236 S. W. (2d) 687, it was held that:

"Amendment to city zoning ordinance reclassifying lot so as to permit erection and construction thereon of modern well equipped doctors' office build-

ing constituted 'spot zoning', since it simply selected one lot, owned by one person, and created for it a particular zoning classification different from that of surrounding property.''

■ In *Cassel* v. *Mayor & City Council of Baltimore*, 195 Md. 348, 73 A. (2d) 486, 489, it was said:

''It is, therefore, universally held that a 'spot zoning' ordinance, which singles out a parcel of land within the limits of a use district and marks it off into a separate district for the benefit of the owner, thereby permitting a use of that parcel inconsistent with the use permitted in the rest of the district, is invalid if it is not in accordance with the comprehensive zoning plan and is merely for private gain.''

The Chancellor's decree will be affirmed with costs adjudged against the City of Nashville and surety on its bond.