17832

CITY OF FLORENCE, Respondent, v. Fred TURBEVILLE, JR., and Rosalynne Turbeville, Appellants

(121 S. E. (2d) 437)

*Messrs. McEachin, Townsend & Zeigler* and *Yarborough & Parrott,* of Florence, *for Appellants,*

*W. H. Caldwell, Esq.,* of Florence, *for Respondent,*

September 5, 1961.

J. B. NESS, Acting Justice.

This appeal involves the validity of a zoning ordinance of the City of Florence.

The proceeding was instituted by the City of Florence to enjoin the appellants, husband and wife, from operating a dancing school in a section of the city zoned for residential purposes by a zoning ordinance adopted August 18, 1952.

The matter was referred to the Master for Florence County, who took all testimony, had the ordinance before him, and had the benefit of arguments and briefs of counsel. He held that the appellants were operating a large dancing school for profit in District R-1, an area zoned for residential purposes, in violation of the ordinance prohibiting such commercial activities in the area, and recommended that the injunction sought by the city be granted.

The appellants excepted to the Report of the Master and argued the matter before the Honorable W. T. McGowan, Jr., Judge of the Civil Court of Florence, who adopted the findings of the Master and permanently enjoined the operation of the school in the zoned area. The order allowed appellants to apply to the city for a permit to conduct such a school as would meet the requirements of the ordinance permitting "customary home occupations." This did not suit appellants and they appealed.

There is no real dispute about the facts in the matter. The record shows that for many years prior to 1952 and thereafter until October of 1959, the appellants conducted a dancing school in the City of Florence at 331-A West Evans Street, which was in an area devoted to business, and that for a number of years prior to 1959 they resided on Madison Avenue in the City of Florence. City licenses for the conduct of the business at 331-A W. Evans Street were obtained each year by appellants, but none for the Madison Avenue address was ever obtained.

On August 18, 1952, the Mayor and Council adopted a comprehensive zoning ordinance, dividing the city into different zones or districts, District R-1, including a subdivision known as "Green Acres", in which area the appellants subsequently on February 18, 1953, purchased a house

and lot known as "1222 Madison Avenue". The appellants occupied this house as a residence, continuing to operate the dancing school at 331-A West Evans Street until about the first of October, 1959. Shortly before that date, a den was added to the rear of the home on Madison Avenue, a building permit being duly secured from the city, but no license to operate a dancing school at the Madison Avenue address was procured. The appellants, prior to 1959, used the home to a very limited extent and at irregular intervals, in giving special or private dancing lessons to individuals or small special groups, and for other limited uses in connection with the West Evans Street School, but shortly after the first of October, 1959, appellants shifted the base of their operations from the West Evans Street location to the Madison Avenue residence. Some two hundred twenty children, varying in age from about five to fourteen years, were enrolled as pupils, each paying tuition fees. Afternoon classes of about ten pupils each were held six days a week from about 2:30 p. m. to 5:30 p. m., each class lasting one hour. On alternate Saturday nights from 6:00 to 8:00 o'clock p. m., classes averaging forty pupils had dancing instruction for one hour and a party for the second hour. During holidays and on special occasions, dances were held on other week nights, but this was not done with any degree of regularity.

There were no signs advertising the Madison Avenue residence as a dancing school—the house is practically soundproof and no evidence was adduced to show that anyone in the neighborhood was disturbed by the noise. The pupils were not allowed to play in the yard or otherwise disturb the neighborhood and the general reputation of the school was good. There is evidence of considerable traffic on the street, especially at the time of night parties, as parents picked up and delivered children, but generally there was little congestion of traffic or lack of parking facilities on the street, because appellants owned and operated two station wagons to pick up and deliver many of the pupils, as well as having some parking space available at the rear of the building for

general use by patrons. On the nights of classes and parties, some twenty to thirty cars came and went.

The appellants employed a bookkeeper, at least one additional instructor and at least one additional person to drive the station wagons in connection with the school and to help generally in its operation.

The pertinent parts of the ordinance in question are as follows:

Section 4 defines "Home Occupation" as follows "An occupation for gain or support conducted only by members of a family residing on the premises, and conducted entirely within the dwelling, provided that no article is sold or offered for sale except such as may be produced by members of the immediate family residing on the premises."

"Section 5. Establishment of Districts:

"A. For the purpose of promoting the public health, morals and general welfare of the community, the City of Florence is hereby divided into districts of which there shall be five (5), known as:

"1. R-1 Districts: One and two family residence districts.

"2. R-2 Districts: Multiple family residence districts.

"3. B-1 Districts: Retail business districts.

"4. B-2 Districts: General business districts.

"5. I-1 Districts: Industrial districts.

\* \* \*

"Section 13: Nonconforming Uses:

"The lawful use of any building or land existing at the time of the enactment of this ordinance may be continued although such use does not conform with the provisions of this ordinance.

\* \* \*

"Section 18: Interpretation, Purpose and Conflict:

"In interpreting and applying the provisions of this ordinance, they shall be held to be the minimum requirements for the promotion of the public safety, health, convenience, prosperity or general welfare \* \* \*.

"The following regulations shall apply in all R-1 districts:

"A. Uses permitted.

"1. One and two family dwellings.

"2. Church or similar place of worship.

"3. Parish house, convent.

"4. Elementary school, high school, or institution for higher education not conducted for gain.

"5. Public park, playground, or other municipal recreational use.

"6. Public library and museum.

"7. Golf course, country club.

"8. Rooming or boarding house, tourist home.

"9. Cemetery, airport, upon approval of the Board of Adjustment and subject to such conditions and safeguards as deemed appropriate by such Board and upon the securing of a permit therefor.

"10. Hospital, sanitarium, rest room, provided no such use shall be established or permitted on a parcel of land less than two (2) acres, in area, nor shall any part or portion of such use be permitted within fifty (50) feet of any street or lot line.

\* \* \*

"13. Customary home occupations, provided that any such occupation shall be conducted in the principal building. There shall be no external evidence of such occupation except a small announcement or professional sign not exceeding one (1) square foot in area, provided that no such sign shall be artificially illuminated.

"14. Customary necessary uses and buildings, provided such uses are incidental to the principal use and no not include any activity commonly conducted for gain. Any accessory building shall be located on the same lot with the principal building."

The exceptions to Judge McGowan's Order are long and repetitious, numbering fifteen in all. In their brief, these exceptions are condensed by appellants into five main questions, as hereinafter appear:

*Question No. 1:* Is there a valid zoning ordinance in effect which would exclude appellants' dancing school from a residential area in the City of Florence? (Exceptions 3, 4 and 5.)

This raises the unique point that the ordinance was never validly adopted by the city because the city had no existence as a municipality from January 8, 1952 until March 20, 1953. The appellants contend that the city was chartered by Act 576 of the 1890 Acts; that the provisions of the 1890 Act were omitted from the 1952 Code as being in effect on January 8, 1952, and that, therefore, the 1890 Act was repealed as of January 8, 1952, and the city, as such, ceased to exist until revived by Act No. 87 of the 1953 Acts.

We find that this contention was not raised by the pleadings or in any other way before the Master or the Judge, and that this exception should be overruled on that point alone. *Edward v. Great Am. Ins. Co.,* 234 S. C. 404, 108 S. E. (2d) 582. However, even if the point had been raised, there is no merit to the position because the 1952 Code must and can contain only the General Statute Laws of the State as provided by Art. 6, Sec. 4, of the Constitution. Statutes incorporating individual cities and towns are special and not general laws. Art. 3, Sec. 34, subd. II of the Constitution; *Thomas v. Macklen,* 186 S. C. 290, 195 S. E. 539.

Many of the cities and towns of this State were incorporated by special acts prior to 1895. Their Charters are made perpetual by Sec. 47-2 of the Code. Certainly these Acts of incorporation have not been carried in our Codes in the last several decades and it is specious to argue that because the 1952 Code does not contain the provisions of the 1890 Act incorporating the City of Florence, the city lost its existence as of January 8, 1952, the effective date of the Code. Since the Act incorporating Florence should not have been in the 1952 Code, its omission does not repeal the 1890 Act. The City of Florence was legally in existence in 1952 and has continued so to be to this day.

The appellants cannot question the existence of the city, as such, in this proceeding. This can only be done by a direct attack upon its existence. *DeTreville v. Groover*, 219 S. C. 313, 65 S. E. (2d) 232; *Green v. City of Rock Hill*, 149 S. C. 234, 147 S. E. 346.

Finally, the legislature, by Act No. 87 of the 1953 Acts, validated all of the acts of the Mayor and City Council between January 8, 1952, and March 20, 1953, the date of the adoption of Act No. 87 of the 1953 Acts. That this can be done is sustained by the following authorities: *Green v. City of Rock Hill, supra;* 16A C. J. S., Constitutional Law, § 431, p. 136; 16A C. J. S., Constitutional Law, § 428, page 131; 62 C. J. S., Municipal Corporations, § 432, page 827; 37 Am. Jur., Municipal Corporations, Sec. 168, page 797.

We find that this Question is without merit and is overruled.

*Question No. 2:* Are defendants entitled to the non-conforming use exemption for the operation of their school of dance in a residential zone? (Exceptions 1, 2 and 3.)

The appellants contend that since they were in business from February until March of 1953, and the Act validating the 1952 zoning ordinance did not become effective until March 20, 1953, they are entitled to the non-conforming use exemption of the ordinance. In other words, they contend that they were in the dancing school business before the ordinance was adopted and since the ordinance allows continuation of businesses existing before its adoption, they are entitled to continue the school. Our answer to the first question answers this exception. We have held above that the ordinance was adopted on August 18, 1952. Therefore, it antedated the establishment of the school at the Madison Street Address, and the appellants are not entitled to the non-conforming use exemption; also, the facts show beyond question that the school as such was not established until

1959. This question is, therefore, answered in the negative, and all exceptions thereabout are overruled.

*Question No. 3:* Are defendants entitled to the exemption of a customary home occupation within a residential zone? (Exceptions 6, 9, 10 and 15.)

The Master and County Judge have found that the dancing school operated by the appellants was of such size, scope and regularity that it did not fall within the exemption of a customary home occupation as set out in the ordinance. The evidence amply sustains this view of the matter. Certainly, a dance school with an enrollment of two hundred twenty pupils, carried on six days a week, although in small daily classes, cannot be considered a customary home use or occupation. In this connection, we adopt the following from the case of *State ex rel. Kaegel v. Holekamp,* Mo. App., 151 S. W. (2d) 685, at page 689:

"In appellant's case, however, the proposed use of the premises as a place for giving instruction in dancing to large numbers of persons who attend regular classes conducted from early morning until far up in the evening is in no sense an undertaking customarily incident to the use of premises for residential purposes. On the contrary, such use (and certainly so on the scale suggested) is purely commercial, and bears no relation whatever to any usual and ordinary home purpose. * * *

"Moreover, there are persons employed to assist in the work other than members of the family residing on the premises. * * *

"Laying aside all manner of pretense, what appellant wishes to be allowed to conduct upon his premises is a dancing school and nothing else, and his right to have a certificate of occupancy from the Building Commissioner is consequently not to be justified upon the ground that such undertaking would constitute a 'home occupation' within the permission of the ordinance."

The exceptions pertaining to this question are overruled.

*Question No. 4:* Is the Zoning Ordinance as applied
■ to exclude appellants' dancing school from a resi-
dential zone reasonably related to the promotion of
public safety, health, convenience, prosperity or general wel-
fare? (Exceptions 7, 11 and 14.)

The appellants contend that because the dancing school
was carried on in an orderly fashion and was not objection-
able to many persons living in the zone, and that there is
no evidence of any decrease in real estate values, its sup-
pression is not reasonably related to the promotion of pub-
lic safety, health, convenience, prosperity or general wel-
fare.

Here it should be remembered that the ordinance is a
comprehensive one covering the whole City of Florence and
that to allow the intrusion of commercial enterprises into
residential areas opens the gates to further intrusions and
eventually will cause a breakdown of the whole scheme.
In our opinion the injunction is amply sustained by the fol-
lowing authority, *Euclid, Ohio v. Ambler Realty Co.,* 272
U. S. 365, 47 S. Ct. 114, 118, 71 L. Ed. 303, 54 A. L. R.
1016, from which the following is taken:

"Here, however, the exclusion is in general terms of all
industrial establishments, and it may thereby happen that not
only offensive or dangerous industries will be excluded, but
those which are neither offensive nor dangerous will share
the same fate. But this is no more than happens in respect
of many practice-forbidding laws which this court has up-
held, although drawn in general terms so as to include in-
dividual cases that may turn out to be innocuous in them-
selves. (Citing cases.) The inclusion of a reasonable margin
to insure effective enforcement will not put upon a law,
otherwise valid, the stamp of invalidity. Such laws may also
find their justification in the fact that, in some fields the
bad fades into the good by such insensible degrees that the
two are not capable of being readily distinguished and sepa-
rated in terms of legislation. In the light of these considera-

tions, we are not prepared to say that the end in view was not sufficient to justify the general rule of the ordinance, although some industries of an innocent character might fall within the proscribed class."

Section 25-24 of McQuillin, Municipal Corporations, 3rd Edition, is as follows:

25.24 "Preservation of character of neighborhood.

"A fundamental purpose of zoning, justified because of its reasonable relationship to the promotion of the public welfare, health and safety, is the preservation of the character of a neighborhood by excluding new uses and structures prejudicial to the restricted purposes of the area and the gradual elimination of existing nonconforming structures, trades and uses. Indeed, zoning laws may require that a comprehensive plan of zoning take into account, among other considerations, the existing character of districts. It has been observed, 'Two purposes are clearly implied in the zoning law: first, the preservation of the character of a neighborhood by excluding new businesses and structures prejudicial to the restricted purposes of the area and the gradual elimination of such existing structures and trades; second, the protection of an owner's property or existing business from the impairment which would result from enforced accommodations to new restrictions.' Zoning regulations promote the general welfare and are valid where they stabilize the value of property, promote the permanency of desirable home surroundings and add to the happiness and comfort of citizens."

See also *Stevenson v. Board of Adjustment,* 230 S. C. 440, 96 S. E. (2d) 456.

In the case of *Momeier v. John McAlister, Inc.,* 231 S. C. 526, 99 S. E. (2d) 177, it was held that the usual presumptions in favor of municipal zoning ordinances exist, especially in view of the light of the study given them by the city authorities, and that the power of zoning is reserved to the legislative branch under the police power.

The Court held in *Euclid, Ohio v. Ambler Realty Co., supra:*

"If the validity of the legislative classification for zoning purposes be fairly debatable, the legislative judgment must be allowed to control."

The municipal authorities having made a reasonable classification in view of the above authorities, this exception is overruled.

> *Question No. 5:* Is the Zoning Ordinance as applied to exclude appellants' dancing school from a residential zone an unconstitutional invasion of appellants' constitutional rights? (Exceptions 8, 12 and 13.)

In this case the appellants bought the property when they knew or could have found out that the zoning ordinance was in effect. At this point, it may be of service to call to the attention of the Bar the prevalence of these zoning ordinances and their effect upon real estate values, in connection with the preparation of abstracts. This is not intended in anywise to apply to the purchase of the property by appellants, as the record is silent on the point. We have heretofore upheld the constitutionality of zoning ordinances generally as will be shown by reference to the cases of *Momeier v. John Mc-Alister, Inc.,* 203 S. C. 353, 27 S. E. (2d) 504, and *Stevenson v. Board of Adjustment, supra.*

Especially pertinent to the matter is the case of *Talbot v. Myrtle Beach Board of Adjustment,* 222 S. C. 165, 72 S. E. (2d) 66, 69. There the Talbots owned some lots across the street from a tourist court they owned. The lots were in an area zoned for residential purposes while the tourist court across the street was in a commercial zone. The Talbots sought relief from the ordinance so as to permit the building of a restaurant on the vacant lots in the residential zone. The case conains a general history of zoning laws and a full discussion of most of the points raised by appellants, who appealed from a decision of the Circuit Judge, upholding the Board in refusing to allow the building of a restaurant. We

could quote at length from that case, but to do so would unduly prolong this opinion. The following, however, is from that case:

"If the limitations upon the use of property imposed by a zoning ordinance apply reasonably and fairly to all, they are valid; and the individual hardship and loss must be borne in order to make possible the greater advantage to the community as a whole."

Appellants contend that because the Ordinance allows churches, elementary and high schools and institutions of learning not conducted for gain in the area, as well as parks, playgrounds, and areas for municipal recreational use, libraries, golf courses, country clubs, and other uses allowed as set forth therein, to disallow the dancing school would be an arbitrary and unconstitutional discrimination against the appellants.

We find that the appellants have not sustained the burden of proving that a dancing school falls within any of these classifications, nor is there any authority to warrant a conclusion that such dancing school should not be distinguished from these classifications. The ordinance in question applies equally to all within the zone. We cannot say that it is unconstitutional on the grounds suggested by appellants. The authorities heretofore cited fully sustain this view.

Judgment affirmed.

TAYLOR, C. J., and OXNER, Moss and LEWIS, JJ., concur.