[No. 37063.    Department One.    April 9, 1964.]

ED C. ANDERSON et al., *Appellants*, v. THE CITY OF SEATTLE
et al., *Respondents*, STANLEY R. GALLUP, *Intervenor-
Respondent.**

*McDowell & McDowell*, for appellants.

*A. C. Van Soelen* and *Gordon F. Crandall*, for respondents
City of Seattle *et al.*

*Richard D. Harris*, for intervenor-respondent.

HUNTER, J.—This is an action by certain property owners
in the city of Seattle to set aside ordinance No. 90506, which
rezoned certain property from RM (multiple residence low
density zone) and IG (general industrial) to RMH (multiple
residence high density zone).

The property in question is an area of approximately a
city block, and is located just north of the west 3100 block
of Commodore Way in Seattle, between Commodore Way
and the Government Locks. It is legally described as
follows:

"That portion of Section 11, Township 25 north, Range 3,
E.W.M., commonly known as Tax Lots 89, 90, 91, 92, 93,
94, 95 and Tax Lot 46. That portion of Section 10, Township
25 North, Range 3 East, W.M., commonly known as Tax
Lots 48 and 49; located on the North side of West Com-

*Reported in 390 P. (2d) 994.

modore Way between 32nd Avenue W., Extended and 31st Ave. W., Extended."

The property of the plaintiffs and the other represented landowners is located to the south of the above property.

The defendant (intervenor-respondent) Stanley R. Gallup obtained options on the property in question. At that time, part of the property was zoned RM and part was zoned IG. He petitioned the city council of the city of Seattle, defendants (respondents), to rezone the property to RMH, representing that he proposed to build an apartment building six stories or 50 feet high. In pursuance of his petition, an ordinance was passed that rezoned the property to RMH. The city council thereafter discovered that Gallup intended to build a 12-story, 126-dwelling apartment building that would be 181 feet high. The council thereupon promptly repealed the ordinance. Prior to the effective date of the repeal, however, and while the property was still zoned RMH, Gallup obtained a building permit from the superintendent of buildings for the construction of a 12-story structure, as permitted under the then existing ordinance.

Plaintiffs (appellants) brought this action against the city and Gallup to invalidate the ordinance. (Hereinafter, Gallup will be referred to as if he were the sole defendant.) At the close of plaintiffs' opening statement the defendant moved for a dismissal, which was granted. This appeal followed.

The plaintiffs contend that under the facts, which are all admitted for the purposes of the defendant's motion, this ordinance should have been declared invalid by the trial court. Plaintiffs contend that the challenged ordinance constitutes invalid "spot zoning."

■ In the recent case of *Pierce v. King Cy.*, 62 Wn. (2d) 324, 382 P. (2d) 628 (1963), we recognized that all "spot zoning" is not illegal; however, we follow the general rule that "spot zoning" is invalid when it is primarily for the private interest of the owner of the property affected, and not related to the general plan for the community as

a whole. A zoning ordinance must have for its basis the public health, safety, morals, or general welfare; if not, it is arbitrary, capricious, unreasonable, and consequently void. In the *Pierce* case, we said·

"We agree with the text writers and specialists in the field of zoning law that spot zoning has come to mean arbitrary, capricious and unreasonable zoning action, and that it is commonly achieved by means of an amendment to a zoning ordinance, as was the precise case here. Where, as in the present situation, the zoning authority by official legislative action designates two lots for a gasoline service station in the heart of a neighborhood of single-family residences already served by commercial and business facilities or subject to be so served in accordance with a comprehensive plan or scheme, such designation is patently a spot zoning; and where the record discloses no basis for such a zoning in furtherance of the public health, safety, or morals, or a contribution either to the general welfare of the people in the area or at large, the zoning is so clearly a spot zoning as to make it arbitrary, capricious and unreasonable. It was, and is, therefore, void."

See *State ex rel. Miller v. Cain,* 40 Wn. (2d) 216, 219, 242 P. (2d) 505 (1952), and authorities compiled in *Pierce v. King Cy., supra.*

The general scope and purpose of the zoning ordinance of the city of Seattle are recited in part as follows:

"26.02.020. *General purpose and scope.* The general purpose of this Title is to protect and promote public health, safety, morals, and general welfare through a well-considered comprehensive plan for the *Use* of land. . . . The economic stability of land *Use* areas and conservation of *Building* values are promoted and protected thereby.

"Its provisions are designed to provide adequate light, air and access, to secure safety from fire and other dangers, and to avoid excessive concentration of population, in order to lessen traffic congestion, and to facilitate adequate provisions for transportation, water, sewerage, schools, parks, and other public requirements. . . .

". . . the provisions of this Title are minimum requirements. . . ."

"26.02.030. *Purpose of residential zones—General.* Eight residential *Zone* classifications permit a variety of housing and population densities without conflict. Protection is pro-

vided against hazards, objectionable influences, traffic, *Building* congestion, and lack of light, air and privacy. Certain essential and compatible public service facilities and institutions are permitted in R *Zones.* . . ."

"26.02.060. *Purpose of multiple family residence zones.* . . .

"The RM *Zone* provides for low density multiple-family Dwellings."

Relative to the RMH classification, to which the property in question was rezoned, the ordinance states:

"The RMH *Zone* provides for high density elevator *Apartment Houses* generally near the City center and for certain intensive institutional *Uses* requiring residential environment. . . ."

We will now consider the record in the light of the *Pierce* case, *supra,* and the objectives of the Seattle zoning ordinance.

The area to the west and south of the rezoned property is zoned as RS (single family residence high density zone), and to the east the zone is IG (general industrial zone). This is distant from the city center, and, if allowed, the contemplated building will be the dominant structure in the entire northwest section of the city of Seattle. The roof level rises to a height approximately in line with 65th and 32nd northeast, in Seattle, a distance of several miles to the north. It would obstruct the view substantially and depreciate the value of many properties in the area. Expensive homes directly across the street to the south will be depreciated in value approximately 20 per cent.

Commodore Way is a narrow street and the only access (other than going through the government reservation of Fort Lawton) to large residential areas called Salmon Bay and Lawtonwood. It is the only access street to properties of the plaintiffs. The contemplated building will house approximately 130 families in a spot comprising less than a full city block. It will create traffic hazards because of the additional traffic from the use of the structure, in addition to the traffic which presently exists because of the residential area, the Coast Guard Station, and a nearby business

area. The school facilities in the area are not adequate to accommodate the additional pupils which will come from the new families in the proposed building, and, if built, the limited street facilities will result in less fire protection.

The plaintiffs' attorney stated, which is also admitted as true by the defendant's motion, that the members of the staff of the city planning commission would testify, based on a survey, that the area was not equipped to take care of the large concentration of people in the contemplated 181-foot structure.

From this record, with no evidence to the contrary, we are satisfied that the building does not conform to the general purpose and comprehensive plan of the Seattle zoning ordinance, *supra*, and that the rezoning falls within the confines of invalid "spot zoning" as defined in the *Pierce* case. In fairness to the trial judge, however, it is to be noted that he did not have the benefit of the *Pierce* case as it was published subsequent to the trial of the instant case.

The trial court erred in dismissing the plaintiffs' case at the close of counsel's opening statement and should have permitted the trial to continue.

We have considered the plaintiffs' other assignments of error and find them to be without merit.

The defendant has made a motion to dismiss the appeal for delay in the perfection of the appeal. The plaintiffs, however, have filed an affidavit stating that the delay was attributed to their belief that the construction of the apartment building was not going to proceed, and that the case would become moot. This has not been refuted by the defendant, and the motion is denied.

The judgment of the trial court is reversed, and the cause is remanded with directions to proceed with the trial.

Costs will abide the final result of the cause.

OTT, C. J., HILL, ROSELLINI, and HALE, JJ., concur.