JAMES N. REDDOCH et al.

*v.*

EULYSE M. SMITH et al.

379 S.W.2d 641.

(*Jackson,* April Term, 1964.)

Opinion filed May 8, 1964.

Petition to Rehear Denied June 4, 1964.

214

CHARLES M. CRUMP, Memphis, APPERSON, CRUMP, DUZANE & MAXWELL, Memphis, of counsel, for plaintiffs in error.

EULYSE M. SMITH, GEORGE L. RICE, LEO BEARMAN, ROBERT W. PHARR, Assistant County Attorney, Memphis,

WILLIAM H. WILLIAMS, County Attorney, Memphis, of counsel, for defendants in error.

MR. CHIEF JUSTICE BURNETT delivered the opinion of the Court.

This appeal involves the authority of the Shelby County Board of Adjustment to grant a zoning variation to the defendant in error, Arthur Murray, so as to permit the erection of a gasoline service station on property situated on the southeast corner of Poplar Avenue at June Road, within the City-County Five-Mile Zone of Shelby County.

The Board of Adjustment granted the application of Murray for re-zoning of the particular property from R-1 residential to commercial, in order that the applicant might consummate a contract entered into with the Texaco Company for the erection of a gasoline station at this location. Under the terms of the contract, Murray was to receive fifty thousand ($50,000.00) dollars. After this application was granted, a petition for certiorari was filed with the Circuit Court. At the hearing thereon, the Circuit Judge found that the evidence did not pre-

ponderate against the finding of the Board of Adjustment and affirmed the granting of the application by the Board. The matter has been appealed to this Court.

There are two questions raised. The first is whether the Board has any authority to act in the premises. In 1936, the Quarterly County Court of Shelby County, by resolution, attempted to transfer the jurisdiction of the Board of Adjustment for the Five-Mile Zone to the Shelby County Board of Adjustment having county-wide jurisdiction outside of the corporate City of Memphis and outside of the Five-Mile Zone. It is the contention of the plaintiff in error that this attempted transfer was invalid. The trial judge held that even though this contention might be true, the county-wide Board of Adjustment was a de facto Board of Adjustment with jurisdiction within the Five-Mile Zone. The reasoning of the trial judge was that since this jurisdiction had been in operation for a period of something over twenty-seven years, it certainly should be held that this was a de facto body.

The trial judge, we think, correctly said that:

"Chapter 613 of the Private Acts of 1931 provided, for the first time, a comprehensive method, or plan, of zoning within a five mile area of municipalities having a population in excess of 160,000 inhabitants in counties having population of 300,000 or more inhabitants. The obvious purpose of the Act was to permit joint participation by both city and county authorities in zoning plans and policies within the Five-Mile area.

"The 1931 Act created, by Section 7, a County Planning Commission to be composed of the members of the Planning Commission of any municipality within

the population classification, and the Board of County Commissioners and Chairman of the Quarterly Court of counties within the population classification.

"By Section 9 of the Act, the County Assessor was designated the Building Commissioner for that part of the county outside of, but within the Five-Mile Zone.

"And by Section 11 of the Act, there was created a County Board of Adjustment, to be composed of seven members, namely, the Chairman and Secretary of the Board of County Commissioners, the Chairman of the Quarterly County Court, and the Chairman of the Board of Adjustment of any city within the population classification, and the remaining three members to be chosen and elected by resolution of the legislative body of the city.

"Pursuant to the provisions of the 1931 Act, the Shelby County Quarterly Court, in joint session with the Commissioners of the City of Memphis, held on October 16, 1933, enacted zoning regulations for the Five-Mile area, and established a County Planning Commission and a County Board of Adjustment, in accordance with the terms of the Act.

"Then in 1935, the Legislature made further provision for county-wide zoning in counties having a population in excess of 300,000. By Chapter 625 of the Private Acts of 1935 the Quarterly Court of such counties was empowered to establish zoning regulations and procedures in that part of the county outside the corporate limits of municipalities, but provided, in Section 2 of the Act, that 'nothing herein contained shall be held to repeal Chapter 613 of the Private Acts

of 1931' which provided for the establishment of zoning within the Five-Mile area.

"By Section 6 of the Act, (1935 Act) there was created a County Board of Adjustment, to consist of seven members, of which the Chairman of the Board of County Commissioners, the Chairman of the Quarterly County Court shall be ex-officio members, and the remaining five members to be chosen and elected by resolution of the legislative body of the County.

"Chapter 706 of the Private Acts of 1935 empowered the Quarterly Court to create a county-wide Planning Commission to have jurisdiction within the unincorporated territory of the county.

"Chapter 707 of the Private Acts of 1935 amended Section 7 of Chapter 613 of the Private Acts of 1931 so as to confer upon the county-wide Planning Commission, created by Chapter 706 of the Private Acts of 1935, all the powers and duties given under Section 7 of Chapter 613 of the Private Acts of 1931.

"This amendment was undoubtedly designed to make clear that insofar as the County Planning Commission was concerned, its jurisdiction was extended to include the Five-Mile area.

"Likewise, by Chapter 707 of the Private Acts of 1935, the 1931 Act was amended so as to give the County Building Commissioner, appointed under Chapter 625 of the Private Acts of 1935, the same powers and duties within the Five-Mile area.

"From the above, it is clear the Legislature intended that the County Planning Commission and the County Building Commissioner, created by the 1935 Act, should

have county-wide jurisdiction, including the Five-Mile area.

"But when the Legislature came to consider the status of the Boards of Adjustment, under the 1931 and 1935 Acts, a somewhat different intent appears. Chapter 707 of the Private Acts of 1935 amends Section 11 of the Private Acts of 1931 so as to add the following new paragraph:

" 'In the event that any county within the population classification of this Act, shall, pursuant to an Act of the General Assembly of the State of Tennessee, have a county board of adjustment with county wide jurisdiction, then the Board of adjustment created by Section 11 of said Act shall be composed of the chairman of the Quarterly County Court, the chairman of the board of commissioners of such county, the chairman of the board of adjustment of any municipality in said county having a population in excess of 160,000 inhabitants by the federal census of 1930, or any subsequent federal census, all of whom shall be ex-officio members of said board of adjustment; and four other members three of whom are to be chosen from among the members of such city board of adjustment by the legislative body of such municipality, the other to be appointed by the Quarterly County Court from among the members of the County Board of adjustment. Said board shall have the right to adopt a name which shall be distinctive so that said board shall not be confused with any other county or city board of adjustment. The members of said board of adjustment, and the board as such, shall have, exercise and enjoy all the

powers, duties, liabilities and privileges set out in said Chapter 613 of the Private Acts of 1931.'

"If, therefore, a county should appoint a County Board of Adjustment, with county-wide jurisdiction, pursuant to the provisions of Chapter 625 of the Private Acts of 1935, then, in that event, it would appear the Legislature intended, by this amendment, that there shall be a separate and distinct board of adjustment— separate and apart from any other county or city board or adjustment—to hear and determine matters arising within the Five-Mile area, clothed with all the rights and duties set out in Chapter 613 of the Private Acts of 1931.

"Pursuant to the provisions of Section 6 of Chapter 625 of the Private Acts of 1935, the Shelby County Quarterly Court, by resolution adopted April 20, 1936, created a county-wide Board of Adjustment known as the Shelby County Board of Adjustment, consisting of seven members, of which the Chairman of the Quarterly Court and the Chairman of the Board of County Commissioners were to be ex-officio members, and the remaining five members were elected for varying terms.

"By the same resolution, the Shelby County Quarterly Court abolished the then existing Shelby County Board of Adjustment previously established pursuant to the provisions of Chapter 613 of the Private Acts of 1931, having jurisdiction within the Five-Mile area.

"It would appear from the foregoing analysis of the several private acts dealing with the subject, that the action of the Shelby County Quarterly Court by its resolution adopted April 20, 1963, appointing the pres-

ent Shelby County Board of Adjustment, and in abolishing the previously appointed Board of Adjustment for the Five-Mile area, was without legislative authority so to do, with the result that the Shelby County Board of Adjustment, as presently constituted, does not conform, ·in composition, to the 1931 Act, as amended by Chapter 707 of the Private Acts of 1935.

\*   \*   \*   \*   \*   \*

"However, the fact remains that this Board, as presently constituted, has been in continuous operation since April 1936, exercising jurisdiction county-wide, including the so-called Five-Mile area. Its jurisdiction has never been challenged by the City Commission nor by any member of the public, prior to this proceeding. It has apparently functioned successfully in conjunction with the Planning Commission operated jointly by the County and the City within the Five-Mile area, and the property rights of many citizens have been determined by the Board. While there is no showing in the record of the number of cases processed by the Board during this extended period of time, it may be safely assumed that there have been a great many, a number of which have undoubtedly reached the courts. At least one case, *Arendale vs. Rasch,* 196 Tenn. 374 [268 S.W.2d 102], has reached the Supreme Court."

█ Thus under this reasoning the trial judge reached the conclusion that the Shelby County Board of Adjustment in the present case was a de facto body with jurisdiction to hear and determine applications for zoning variations within the Five-Mile Zone. The reasoning of this Court in *Ridout v. State,* 161 Tenn. 248, 256, 30 S.W.

2d 255, 257, 71 A.L.R. 830, clearly supports this conclusion. We think without a question that under these circumstances this body was a de facto body and had jurisdiction to act under the premises here considered. This being true the first assignment of error must be overruled.

A board of the kind here under consideration, according to Yokley, Zoning Law & Practice, Vol. 1, sec. 131, page 319, "is, in reality, a recognition of the imperfection of human nature, for if it were possible to draft the perfect ordinance for a substantially sized municipality, there would be no need for such a board. Therefore, our courts hold that it is not an unlawful delegation of authority for a board of adjustment to hear and decide appeals, and a board of appeals applying a zoning provision must be invested with a liberal discretion." Such a Board of Adjustment acts as a quasi-judicial body. It is not a legislative body, but an administrative body. Legislative authority is not delegated to it. Its decision becomes final on the facts, and an appeal therefrom is authorized to court by way of a common law writ of certiorari. Sections 27-801 and 27-802, T.C.A.

A board of the kind here under consideration, being an administrative agency, does not have legislative powers and may not review or amend legislatively enacted rules as to uses or amend ordinances under the guise of a variance. This board was created to administer the zoning ordinance but not to formulate and revise it. Under sec. 6 of Chapter 625, Private Acts of 1935, herein above referred to, and specifically under subsection 3 thereof, this board in passing on appeals is given the power to change certain properties "where there

are practical difficulties or unnecessary hardships in the way of carrying out the strict letter of such regulations, * * *." In so doing the board is "vested with a wide discretion and the courts will not interfere with that discretion unless it is abused." Yokley, supra, sec. 142, page 350.

When the facts have been established and this board has determined the issue on these facts and the matter is taken to the court by the common law writ of certiorari the trial judge there reviews the evidence, which has been introduced before this board, and his duty is "to determine by a preponderance [of the evidence], whether the commission had acted beyond its jurisdiction, arbitrarily, fraudulently or illegally." *Hoover Motor Express v. Railroad & Public Utilities Commission,* 195 Tenn. 593, 261 S.W.2d 233. The scope of review in this type of case is set forth in the Hoover case thus: "[W]hether there is any material evidence to support the finding and order of the Commission is, therefore, a matter of law for the Court upon review, and to ascertain that, whether there is any material evidence, is the limited purpose for which the evidence introduced before the Commission is admissible in the Court * * *." Hoover, supra. Thus we come to the second assignment of error herein raised, that is, whether the board in acting herein acted illegally and arbitrarily in granting this variation. The gist of this assignment is that the board had no competent evidence before it to authorize the variation granted. The cases on the question presented are legion. Many of them are set forth in two annotations on the question, one is 168 A.L.R., beginning at page 13, and extending to page 156; and in 75 A.L.R.2d, beginning at page 168 and going through page 311 of this

annotation. We have read most of these two annotations and have also read all of the cases cited in the briefs. In the majority of these cases the courts have decided against a variation. These cases though are based on every conceivable set of facts and many of them involve situations where the Board of Zoning Appeals decided against the variation and on appeal their decision was affirmed. No doubt some of these cases involve procedures different from those in our State. However, there are, among these cases, factual situations very similar to the factual situation herein where the variation has been allowed and approved by the court. We make this statement merely to show that other courts in other jurisdictions have reached the conclusion, under a similar state of facts that this was material evidence upon which a variation might be granted.

■■ In the oral argument before this Court it was primarily stressed that this variation was sought because of the fifty thousand ($50,000.00) dollars which the applicant was to receive for this lot for a filling station. The courts generally have determined that price alone, or financial or pecuniary loss to the applicant, does not, of itself, establish a case of "unnecessary hardship" as a ground for granting the variance. In considering whether there is material evidence to support the variation allowed, we do not consider one factor alone on this question of "practical difficulty" or "unnecessary hardship", but all relevant factors must be considered and if from all of these factors there is material evidence in the record which has convinced the Board of Zoning Appeals that a variation should be allowed then we as a Court do not have the right or authority to interfere with this variation allowed by the Board.

■ The property in question fronts 220.2 feet on Poplar Avenue, on the southwest corner of Poplar Avenue and June Road, and extends parallel with June Road to a depth of 180.2 feet. On the north side of Poplar Avenue, immediately across the street from this property, is a vacant lot which is also owned by the applicant here. It was formerly occupied by the Tennessee Highway Patrol. Immediately east of this property is located the Memphis Memorial Park Cemetery. This property is about a thousand feet west of the new expressway interchange. This property has been owned by the applicant some twenty-five or thirty years and was formerly used as a nursery. For the past seven or eight years it had been vacant and, although advertised for sale, there has been no sale. It was suggested that the reason there has been no sale for residential purposes is because of the heavy volume of traffic on Poplar Avenue and its close proximity to the expressway and interchange. There is testimony in the record of some three or four real estate men who stated that the present zoning of the property was not correct and that it was entitled to a variation for ''practical difficulties'' or ''unnecessary hardship''. These men stated that to refuse the variation was, in their judgment, a denial of a property right because there was nothing ''on earth he could do with it.'' There is also testimony in the record that the character of the area would not be changed by granting this variation for a commercial venture. It is shown that there is a restaurant on the south side of Poplar west of the property in question; there was a construction business with heavy equipment stored across the street from the property; there was a home for aged women nearby; and other evidence of this kind, which

the Board of Zoning Appeals believed and their feeling has been concurred in by the trial judge. We think, putting all this evidence together under the situation here, there is clearly material evidence to support the variance allowed. Material evidence, as here used, is evidence material to the question in controversy, or which may necessarily enter into the consideration of the controversy, and by itself or in connection with other evidence be determinative of the case. Obviously, it must be evidence of a substantial nature and not merely a scintilla. We know, of course, that the men who composed this Board, heard this evidence, and viewed the property, were substantial citizens and were in a far better position to know and determine under the facts presented to them whether or not this variation should be granted than is a court which does not see and hear these things.

We think there is substantial material evidence to support the variation granted. This being true, the judgment of the trial court must be affirmed.

## On Petition to Rehear

Counsel for plaintiffs in error has filed a courteous, respectful and dignified petition to rehear. Concededly this petition is merely a re-argument of the second proposition considered in our opinion, which was so ably argued and briefed originally. There are no new or additional authorities cited. It is largely complained that we did not cite more authorities in our opinion, and certain authorities and excerpts from opinions heretofore cited and relied upon in oral argument are again sought to be cited as controlling in the assignments of error and brief on this proposition.

We think that counsel for the plaintiffs in error overlooks the fact that this is an "administrative board" rather than a "legislative body" that is acting in the particular instance. We, in our original opinion, based it on this question entirely, that is, that these were the acts of an "administrative body" rather than the acts of a "legislative body", and thus, as we see it, under our authorities there is substantial evidence to support the acts of this "administrative body".

Of course, we could take up in the opinion all the authorities cited pro and con, but under the authorities of this State the acts of an "administrative body" when supported by material evidence is binding upon us.

Counsel again seeks to argue the proposition that the evidence we have concluded is material evidence is not such evidence. We for reasons stated in our original opinion must disagree. We have not held, and are not holding, that the rule of "unique hardship" does not obtain in Tennessee. All that we have held, and all that we can hold, under such a case as this as it now comes to us, is that there is material evidence to support the finding of the "administrative body" which has been concurred in by the trial judge, and that this being true there is nothing that we can do about the matter. We are not in any manner attempting to say anything about the holding of this Court in *Grant v. McCullough*, 196 Tenn. 671, 270 S.W.2d 317, with reference to "spot zoning". The Act held unconstitutional in the Grant case was a "legislative" act, not the act of an "administrative body".

For reasons herein expressed the petition to rehear is denied.