IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
September 21, 2011Session


ADELAIDA FIELDING ET AL. v. THE METROPOLITAN GOVERNMENT
OF LYNCHBURG, MOORE COUNTY, TENNESSEE ET AL.


Appeal from the Chancery Court for Moore County
No. 2415     James B. Cox, Chancellor

---

No. M2011-00417-COA-R3-CV - Filed January 31, 2012

---

The plaintiffs filed this declaratory judgment action seeking to invalidate a re-zoning ordinance on the grounds that it constitutes illegal "spot zoning," and that the re-zoned area was improperly classified in violation of the local general zoning ordinance. The trial court upheld the re-zoning ordinance, finding it was enacted in furtherance of public safety goals and that the re-zoning classification was reasonable and rational. We affirm.


**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

FRANK G. CLEMENT, JR., J., delivered the opinion of the Court, in which ANDY D. BENNETT and RICHARD H. DINKINS, JJ., joined.

J. Stanley Rogers and Edward H. North, Manchester, Tennessee, for the appellants, Adelaida Fielding and Roger Johnson and wife, Julia Ann Johnson.

Ginger Bobo Shofner, Shelbyville, Tennessee, for the appellee, The Metropolitan Government of Lynchburg, Moore, County, Tennessee.

Vincent R. Ambrose, Jr., Tullahoma, Tennessee, Pro Se.


**OPINION**


This dispute concerns a re-zoning ordinance enacted by the Metropolitan Government of Lynchburg, Moore County, Tennessee ("Metro"). The re-zoning ordinance affects 0.81 acre of a 7-acre plot located on Overby Trail, a rural road in the northeast corner of Lynchburg. It is the plaintiffs' position that the re-zoning ordinance constitutes an act of illegal "spot zoning" and violates the comprehensive plan for development in the Metro area; thus, it should be declared invalid.

The controversy began in 2007, when Vincent Ambrose Jr. purchased the 7-acre plot, and, soon thereafter, appeared before the Metro Planning Commission to request that a small portion be re-zoned so that he could open and operate an automobile towing/roadside assistance business. At the time, all of the property along Overby Trail was zoned A-1 Agricultural-Forestry District, as provided in the Zoning Ordinance of the Metropolitan Government of Lynchburg, Moore County, Tennessee, which was enacted in 1997 and covered the entire Metro area ("The 1997 General Zoning Ordinance"). Forestry, farming, and low density residential uses are permitted in A-1 Districts, as are some commercial uses related to forestry and farming. There are several additional commercial uses permitted as "special exceptions." However, automobile towing is not listed as a permitted use or a special exception.

The Planning Commission approved Mr. Ambrose's proposal, and recommended that the Metro Council re-zone 0.81 acre of Mr. Ambrose's property from A-1 Agricultural-Forestry to C-2 General Commercial. Notice of the proposed re-zoning was published in a local Lynchburg newspaper.

A public hearing was held April 21, 2008. No parties appeared to oppose Mr. Ambrose, and the Metro Council unanimously voted to enact a re-zoning ordinance specifically for Mr. Ambrose's property. It was titled, "An Ordinance to Amend the Lynchburg/Moore County Metropolitan Zoning Ordinance, and Official Zoning Map of Lynchburg/Moore County, Tennessee, by Amending a Portion of One Parcel, Consisting [of] Seven (7) Acres, of which Approximately 0.81 Acres is Requested, from the A-1 (Agricultural-Forestry) to the C-2 (Commercial District- General) Zoning District" (hereafter, "the Ambrose Re-zoning Ordinance").

Mr. Ambrose immediately commenced operation of his towing business under the name, "Southern Pride Towing." He erected a chain link fence around the re-zoned area, where he planned to store towed automobiles, and began providing towing/emergency roadside services 24/7. He also allowed the Metro Fire Department to use his property to conduct "jaws of life" training for emergency workers, and did presentations on vehicle safety for local high schools.

Mr. Ambrose's closest neighbors – Adelaida Fielding, a widow living next door, and Roger and Julie Ann Johnson, a married couple living across the street – were displeased with the unsightliness and noise that accompanied Southern Pride Towing. They were particularly bothered when Mr. Ambrose towed vehicles late at night and when Mr. Ambrose left towed vehicles in his residential driveway, rather than within the fenced-in C-2 area. Ms. Fielding and the Johnsons resided on Overby Trail since the early 1970s, and they believed

Southern Pride Towing generally destroyed the peace and tranquility of the neighborhood and caused a decrease in the value of their homes.

On March 9, 2010, Ms. Fielding and Mr. and Mrs. Johnson (collectively, "Plaintiffs") filed suit against Mr. Ambrose and Metro (collectively, "Defendants"). Plaintiffs sought a declaratory judgment striking down the Ambrose Re-zoning Ordinance, an injunction prohibiting Mr. Ambrose from continuing operation of Southern Pride Towing, and damages for the decrease in value to their respective properties. Following a bench trial, the court primarily ruled in favor of Metro, however, the court granted Plaintiffs some injunctive relief. The trial court held, *inter alia*, that Mr. Ambrose is enjoined from performing automobile safety training or safety demonstrations on his property and from conducting his business outside of the C-2 area, with reasonable, minor exceptions: 1) Mr. Ambrose is permitted to park his tow truck in his residential driveway, 2) Mr. Ambrose is permitted to park his rollback tow truck with vehicles loaded in his residential driveway overnight for the purpose of moving them to the business lot the following day, not to exceed a period of 24 hours. The trial court also recommended that Mr. Ambrose make all reasonable efforts to conceal the towed vehicles and generally improve the aesthetics of his operation. This appeal by Plaintiffs followed.

JUDICIAL REVIEW OF LOCAL ZONING ORDINANCES

Local governments are authorized, by Tennessee Code Annotated § 13-7-201, to enact zoning ordinances "for the purpose of promoting the public health, safety, morals, convenience, order, prosperity and general welfare." It is well-settled that when a local governing body enacts a zoning ordinance, it is acting in a legislative capacity. *See Fallin v. Knox Cnty. Bd. of Comm'rs*, 656 S.W.2d 338, 342 (Tenn. 1983). Thus, our review of such legislative action is very limited. As the Tennessee Supreme Court held in *Fallin*:

> In enacting or amending zoning legislation, the local authorities are vested with broad discretion and, in cases where the validity of a zoning ordinance is fairly debatable, the court cannot substitute its judgment for that of the legislative authority. If there is a rational or justifiable basis for the enactment and it does not violate any state statute or positive constitutional guaranty, the wisdom of the zoning regulation is a matter exclusively for legislative determination.

> In accordance with these principles, it has been stated that the courts should not interfere with the exercise of zoning power and hold a zoning enactment invalid, unless the enactment, in whole or in relation to any particular property, is shown to be clearly arbitrary, capricious, or

unreasonable, having no substantial relation to the public health, safety, or welfare, or is plainly contrary to the zoning laws.

*Id.* at 342-43. Thus, "the exercise of the zoning power should not be subjected to judicial interference unless clearly necessary." *Id.* at 343.

As for the trial court's findings of fact, our review is de novo, and we presume that the findings of fact are correct unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Rawlings v. John Hancock Mut. Life Ins. Co.*, 78 S.W.3d 291, 296 (Tenn. Ct. App. 2001). For the evidence to preponderate against a trial court's finding of fact, it must support another finding of fact with greater convincing effect. *Id.*; *see also The Realty Shop, Inc. v. R.R. Westminster Holding, Inc.*, 7 S.W.3d 581, 596 (Tenn. Ct. App. 1999).

I.

ILLEGAL SPOT ZONING

Plaintiffs assert that judicial relief is justified in this case because the Ambrose Re-zoning Ordinance amounts to an act of "illegal spot zoning." The term "illegal spot zoning" refers to a process in which a small parcel of land is *illegally* singled out and classified completely differently from that of the surrounding area, solely for the benefit of the owner of the parcel and to the detriment of others.[1] *See Fallin*, 656 S.W.2d at 343; *Grant et al. v. McCullough et al.*, 270 S.W.2d 317, 318-19 (Tenn. 1954). Because such "illegal spot zones" are enacted to the detriment of the surrounding community, illegal spot zoning ordinances have been described as the "very antithesis of planned zoning." *Fallin*, 656 S.W.2d at 343 (citing *Rodgers v. Village of Tarrytown*, 96 N.E.2d 731 (N.Y. 1951)). The reasoning is that these ordinances "do not bear a substantial relationship to the public health, safety, morals and general welfare and are out of harmony and conflict with the comprehensive zoning ordinance of the particular municipality." *Id.*

The foregoing notwithstanding, every instance of so-called "spot zoning" is not illegal. *See Crockett v. Rutherford Cnty et al.*, No. M2000-01405-COA-R3-CV, 2002 WL 1677725, at *3 (Tenn. Ct. App. July 25, 2002). Like any zoning ordinance, a zoning ordinance that pertains to a relatively small tract of land, a "spot" so-to-speak, is illegal only

---

[1]We are using the terms "spot zoning" and "illegal spot zoning" to clarify that small parcels of land can be re-zoned without constituting "illegal spot zoning." Some courts do not use the term "spot zoning" to refer to legal re-zoning enactments affecting small parcels of land. *See Fallin,* 656 S.W.2d at 343; *Grant*, 217 S.W.2d at 318. Other courts use the term "spot zoning" to refer to any re-zoning of a small parcel of land and distinguish between legal spot zoning and illegal spot zoning, as we have here. *See Quoc Tu Pham*, 2009 WL 2144127, at *3, *Crockett*, 2002 WL 1677725, at *3.

if it is clearly "arbitrary, capricious, unreasonable, or violates a state statute or constitutional guaranty." *Id.* (citing *Fallin*, 656 S.W.2d at 342-43). In *Quoc Tu Pham v. City of Chattanooga*, this court stated:

> In order to constitute "illegal spot zoning," a zoning ordinance: (1) must pertain to a single parcel or a limited area, ordinarily for the benefit of a particular property owner or specially interested party; and (2) must be inconsistent with the city's comprehensive plan, or if there is none, with the character and zoning of the surrounding area, or the purposes of the zoning regulation, i.e., the public health, safety, and general welfare. In addressing a claim of improper spot zoning, the most important factor is whether the rezoned land is being treated *unjustifiably different* from the surrounding land, thereby creating an island having no relevant differences from its neighboring property.

No. E2008-02410-COA-R3-CV, 2009 WL 2144127, at *3 (Tenn. Ct. App. July 20, 2009) (quoting 83 Am. Jur. 2d Zoning and Planning § 110 (2008)) (emphasis added).

In *Grant v. McCullough*, the Tennessee Supreme Court found illegal spot zoning where a single lot was re-zoned from residential to commercial so that the property owner could open a neighborhood store. 270 S.W.2d at 318. The court reasoned, "mercantile stores were already available to the neighborhood. Therefore, the change of this one parcel of land . . . cannot fairly be held to have been a change for the general welfare of the people in . . . the neighborhood." *Id.* (The court further stated, "no basis for this action can be conjured other than it emanated from a strong desire to help this good lady."). Similarly, in *Crockett*, the court considered a spot zoning ordinance enacted so that a radio tower could be constructed on the property. 2002 WL 1677725, at *1. The proponents of the ordinance argued the community would benefit from "the dissemination of information to the public at large." *Id.* at *4. Finding "there is a plethora of other sources through which the public may obtain information without the necessity of another radio tower," the *Crockett* court held the ordinance invalid. *Id.*; *see also Quoc Tu Pham*, 2009 WL 2144127, at *4 (spot zoning ordinance held invalid where there was no "rational relationship" between the ordinance and the reasons cited by the city for its enactment).

By contrast, in *Fallin v. Knox Cnty. Bd. of Comm'rs*, the court upheld a re-zoning ordinance that affected a relatively small parcel of land. 656 S.W.2d 338, 344 (Tenn. 1983). A 10-acre plot, which was surrounded by property zoned for agriculture, forestry, and low-density residential uses, was re-zoned to allow for the construction of a 275-unit apartment complex. *Id.* at 340. The *Fallin* court considered that the new zoning "would not represent a change in the kind of use permitted, . . . but the intensity of such use would be greatly

-5-

increased," from 2-3 dwelling units per acre under the previous zoning ordinance to 27 dwelling units per acre. *Id.* at 343. The court also considered the fact that traffic in the area would dramatically increase but there was also evidence "that a need exists in this particular area . . . for additional apartments." *Id.* Reasoning that "[a]ll of these factors are proper for consideration of the legislative zoning authority," the court concluded that the re-zoning ordinance was "fairly debatable and, therefore, . . . we must permit it to stand as valid legislation." *Id.* at 343-44.

In the case at bar, Mr. Ambrose's property was clearly singled out for use not otherwise permitted in the Overby Trail area. Thus, keeping in mind the County Council's broad discretion in zoning matters, we must consider whether the differential treatment of Mr. Ambrose's property is consistent with the comprehensive development plan in the 1997 Zoning Ordinance, and more importantly, whether the differing treatment is justified. *See Fallin*, 656 S.W.2d at 343; *Quoc Tu Pham*, 2009 WL 2144127, at *3.

THE 1997 GENERAL ZONING ORDINANCE

We begin by examining the 1997 General Zoning Ordinance. Section 1.030 provides:

The purpose of this ordinance is to promote the public health, safety, morals, convenience, order, prosperity and general welfare by:

A. enhancing the character and stability or residential, business, commercial, and industrial areas, and promoting the orderly and beneficial development of such areas;
B. preventing the overcrowding of land;
C. conserving the value of land and buildings;
D. minimizing traffic hazards and congestions;
E. preventing undue concentration of population;
F. providing for adequate light, air, privacy, and sanitation;
G. reducing hazards from fire, flood, and other dangers;
H. assisting in the economic provision, utilization, and expansion of all services provided by the public, including but not limited to streets, water, and sewer service, recreation, schools, and emergency services;
I. encouraging the most appropriate uses of land;
J. enhancing the natural, man-made and historical amenities of Lynchburg and Moore County, Tennessee.

Metropolitan Lynchburg Moore County, Tenn., Zoning Ordinance §1.030 (1997).

Article V, "Zoning Districts," describes the nine zoning classifications used in Moore County. As stated, all of the property along Overby Trail, other than the 0.81 acre at issue, is zoned A-1 Agricultural-Forestry. A-1 zones are "intended to preserve space for agricultural and forestry uses in the Metropolitan area which together comprise an important segment of the total economy, . . . Areas assigned to the A-1 District are primarily areas where growth of an urban or nonrural nature is deemed undesirable." *Id.* § 5.041(A). Agricultural, forestry, and low-density residential uses are permitted, as are some related commercial uses, such as agricultural processing and animal husbandry services. *Id.* § 5.041(B). Other commercial uses are prohibited in A-1 Districts, unless a "special exception" is approved by the Planning Commission. *See id.* § 5.041(B)-(C).

C-2 General Commercial Districts are "designed for a wide range of industrial and related uses which conform to a high level of performance standards." *Id.* § 5.046(A). New residential development is excluded from C-2 zones, "both to protect residences from an undesirable environment and to ensure the reservation of adequate areas for commercial development." *Id.* Examples of uses permitted include, "Auto Accessories," "Automobile Parking," Business Offices," and "Government Services and Utilities." *Id.* § 5.046(B).

THE AMBROSE RE-ZONING ORDINANCE

The Metro Planning Commission first considered Mr. Ambrose's proposal to re-zone a portion of his property at its January 8, 2008 meeting. The minutes from that meeting provide in pertinent part:

> Mr. Ambrose appeared before the commission requesting information concerning rezoning his property. Mr. Ambrose owns seven acres on Overby Trail and is interested in operating a wrecker/tow service from part of his property. *He will mainly tow for our county and highway patrol. This will help our county deputies because many times they are tied up for hours waiting on a tow truck.* He only wants to rezone a portion of his seven acres. We asked him to come back to our next meeting with a site plan of his property noting the area he would like to rezone and where the proposed fence would be.

(Emphasis added). After approval by the Planning Commission, the matter was considered by the Metro Council on March 17, 2008. The minutes from that meeting provide in pertinent part:

> Chairman Parks informed the Council of the property rezoning at 191 Overby Trail and asked if there was anyone present that could tell the Council what this was about. Vince Ambrose spoke up from the audience and told the

Council what he needed to do was put a fence up for his tow company to hold vehicles for the Sheriff's Department and the Highway Patrol until the insurance companies can come to pick them up. It won't be a junk yard, Ambrose stated, it is just so that I can have a fast response time and hold the car for a few days.

The minutes from the April 21, 2008, Metro Council public hearing also provide:

> Chairman Parks asked Vince Ambrose if he would tell everyone what he wanted to do. Ambrose stated he would like to rezone one acre so he could put in the six-foot fence required to store vehicles he picks up from wrecks. Ambrose continued to say he would only keep the vehicles long enough for the insurance companies to inspect the damage and he would then take the vehicles for repair.

These statements reflect that public safety concerns motivated the Metro Council's decision to enact the Ambrose Re-zoning Ordinance. Unlike in *Grant* and *Crockett*, the unrefuted evidence in this matter establishes that there were no other towing businesses based in the Metro area. Mr. Ambrose testified that stranded motorists were often required to wait for long periods of time for tow trucks from other counties. Mr. Ambrose made himself available 24 hours a day, 7 days a week, and provided a wide range of services, from towing wrecked vehicles, to unlocking car doors and changing flat tires. Mr. Ambrose testified that he worked closely with the Moore County Sheriff's Department, the Highway Patrol, the Fire Department, and Emergency Medical units, and as a result, emergency response times for these services "have been cut down drastically." He also explained that because he was the only employee of Southern Pride Towing, basing the operation from his residence enabled him to respond more quickly, and be available at any hour. Improving public safety and the efficient allocation of law enforcement resources are certainly rational motivations for the enactment of a zoning ordinance, beneficial to the community at large, fully consistent with the express purposes of the 1997 General Zoning Ordinance, and well within Metro's authority under Tennessee Code Annotated § 13-7-201.

Nevertheless, Plaintiffs contend that Overby Trail, located in a large A-1 Agriculture-Forestry District, is an inappropriate location for a C-2 General Commercial District. Relying on *Fallin*, Plaintiffs argue that C-2 districts do not allow for residential uses, while A-1 zones do; therefore, the Re-zoning Ordinance represents a change in the "kind" of use permitted, rendering it invalid. We find Plaintiffs' reliance on *Fallin* misplaced. While the court in *Fallin* did rely upon the fact that the re-zoning ordinance did not change the kind of use permitted, the court did not find this was a necessary condition for a valid re-zoning ordinance. *See Fallin*, 342-44. The type of use permitted in the re-zoned area was just one of

the factors the *Fallin* court considered in determining there was a rational basis for the re-zoning ordinance at issue in that case. *Id.*

In the case at bar, there are other relevant factors that establish a rational basis for the Ambrose Re-zoning Ordinance. There is proof in the record, which the trial court found credible, that there were other businesses in the Overby Trail area including a gun shop and an automobile body shop. Moreover, as detailed above, the rural nature and relative isolation of this area is exactly the reason the Planning Commission and the County Council saw a public safety need for Mr. Ambrose's services – because out-of-county towing businesses often took hours to meet stranded drivers. Last, the re-zoning in this case, though perhaps different in "kind," will have a far lesser impact on the surrounding property than the re-zoning for a 275-unit apartment complex in *Fallin*.

We are respectful of Plaintiffs' concerns and frustration arising from the foregoing changes; however, as the Supreme Court stated in *Fallin*, "local authorities are vested with broad discretion" in zoning matters and "where the validity of a zoning ordinance is fairly debatable, the court cannot substitute its judgment." *Id.* at 342. For these reasons, we have concluded that the Ambrose Re-zoning Ordinance does not constitute illegal spot zoning.

## II.

Plaintiffs alternatively argue the C-2 classification in the Ambrose Re-zoning Ordinance violates the 1997 General Zoning Ordinance because the general ordinance lists "automobile wrecking, junk, and salvage yards" as permissible only in I-2 Medium and Heavy Manufacturing and Industrial Districts. *See id.* §5.048. "Automobile wrecking, junk, and salvage yards" is a defined term in the 1997 General Zoning Ordinance: "Any lot or place of business which is exposed to weather and upon which more than five (5) motor vehicles of any kind, incapable of being operated, and which it would not be economically feasible to make operative are placed, located, found." *Id.* §2.020.

The trial court determined Mr. Ambrose's business does not constitute an "automobile wrecking, junk and salvage yard[]," and the evidence in the record does not preponderate against this finding. Moreover, the 1997 General Zoning Ordinance does not specify a zone for a "towing" or "roadside assistance" business, nor does it contain a defined term that accurately encompasses Mr. Ambrose's towing business. "Automobile parking" and "Government utilities" are expressly permitted uses in a C-2 General Commercial District. *See id.* § 5.046. Although neither of these uses is defined, the common conception of such activities could be described as similar to Mr. Ambrose's operation. For these reasons, we find the Metro Council's decision to classify the re-zoned area as a C-2 district is "fairly

debatable;" therefore, we are obliged to "permit it to stand as valid legislation." *Fallin*, 656 S.W.2d 343-44.

## IN CONCLUSION

The judgment of the trial court is affirmed in all respects, and the recommendations to Mr. Ambrose are hereby incorporated into the order of this court. Costs of appeal are assessed against Plaintiffs, Adelaida Fielding, Roger Johnson, and Julie Ann Johnson.

_____
FRANK G. CLEMENT, JR., JUDGE