IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
August 22, 2017 Session

## ISI HOLDINGS OF TN, LLC, ET AL. v. MOUNT PLEASANT REGIONAL PLANNING COMMISSION, ET AL.

**Appeal from the Chancery Court for Maury County**
**No. 16-049   Stella L. Hargrove, Judge**

_____

### No. M2016-01607-COA-R3-CV

_____

This is an appeal from a successful petition for a writ of certiorari involving land use. The trial court ruled in favor of the petitioners after finding that the location approved for the proposed power station violated an applicable zoning ordinance. After the trial court's decision, the City of Mount Pleasant amended its ordinance to clarify that the zoning ordinance did not apply to public utilities. The City of Mount Pleasant Planning Commission thereafter approved the construction of the power station under the amended ordinance. The petitioners filed no writ of certiorari of the approval under the amended ordinance and therefore ask that this appeal be dismissed as moot. Because this case no longer serves to offer any meaningful relief to the parties and no exceptions to the mootness doctrine are present, we dismiss this appeal as moot.

**Tenn. R. App. P. 3 Appeal as of Right; Appeal Dismissed**

J. STEVEN STAFFORD, P.J.,W.S., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P.J.,M.S., and RICHARD H. DINKINS, JJ., joined.

Mark E. McGrady, Nashville, Tennessee, for the appellant, Mount Pleasant Regional Planning Commission.

Kori Bledsoe Jones, Columbia, Tennessee, for the appellant, Mount Pleasant Power System.

Brian Christian Neal and Gregory T. Young, Nashville, Tennessee, for the appellees, ISI Holdings of TN, LLC and Insulating Services, Inc.[1]

_____

[1] Neither ISI Holdings of TN, LLC nor Insulating Services, Inc. filed a brief in this case; rather their only participation in this appeal was the filing of a motion to consider post-judgment facts and to dismiss this appeal as moot. As such, these parties were only permitted to address these motions at oral argument and were not permitted to address the underlying merits of the trial court's decision.

# OPINION

## Background

Appellant Mount Pleasant Power System ("the Power System") proposed a municipal project for the construction of an electrical substation, an open pole yard, and an open transformer storage area ("the Project"), which was approved by the Mount Pleasant Regional Planning Commission ("the Planning Commission" and together with the Power System, "Appellants") on or about December 8, 2015. Appellees ISI Holdings of TN, LLC and Insulating Services, Inc. (together, "Appellees") either own or occupy the property adjacent to the property upon which the Project is to be constructed. On February 3, 2016, Appellees filed a verified petition for a writ of certiorari and supersedeas to challenge the approval, arguing that the approval violated the zoning regulations contained in the Mount Pleasant Municipal Code, and that the Power System provided inadequate notice of the Project. Specifically, Appellees alleged that the Mount Pleasant Municipal Code required that public utility uses be confined to areas zoned "AG," or agricultural districts, while the property proposed for the Project was zoned "LM", for restrictive light manufacturing uses.

The trial court entered an order directing the Clerk and Master to issue writs of certiorari and supersedeas on February 4, 2016. The record from the administrative proceeding was subsequently filed in the trial court. Shortly thereafter, Appellants filed a motion to dissolve the writ of supersedeas on the ground that Appellees failed to provide adequate notice or post a bond. In the alternative, Appellants asked that bond be set at no less than $1 million. The matter was set by agreement for final hearing on June 2, 2016.

At the hearing, the parties stipulated to certain facts and exhibits to be considered by the trial court. Following the hearing, the trial court entered an order overturning the Planning Commission's decision to approve the Project as "illegal, arbitrary, capricious and an abuse of discretion" because the Project did not comply with Mount Pleasant's zoning ordinance. The trial court also denied Appellants' request to dissolve the writ of supersedeas. Appellants appealed.

After Appellants filed their briefs, on January 19, 2017, Appellees filed a motion to consider post-judgment facts and dismiss the appeal as moot. Appellees argued that this Court should consider the following facts:

1. While this appeal was pending, on August 23, 2016, the Mount Pleasant City Commission passed Ordinance 2016-989 ("Amended Ordinance") that does the following:

a. Permits public utilities in any zoning district within the City of Mount Pleasant; [and]

b. Specifies that the restrictions set forth for properties zoned LM, among other things, "shall not apply to public utilities or public utility improvements."

2. Thereafter, on September 13, 2016, the Planning Commission approved the Project under the Amended Ordinance;

3. Thereafter, [the Power System] began constructing the Project; [and]

4. Appellees have not timely filed a Writ of Certiorari or Declaratory Judgment action challenging passage of the Amended Ordinance, approval of the Project by the Planning Commission under the Amended Ordinance, or [the Power System's] current construction of the Project.

(Internal citations omitted). Because of the Amended Ordinance, Appellees argued that the Power System had succeeded in getting approval for the Project and that the appeal was rendered moot by the additional facts.

The Planning Commission responded to Appellees' motion, agreeing that facts 1, 2, and 3 should be considered in this appeal, but arguing that because a challenge to an ordinance is categorized as a declaratory judgment action with a ten year statute of limitations, that the case was not rendered moot, as Appellees still had time to challenge the ordinance upon which the Project was approved in September 2016. The Power System also responded, agreeing that all the facts should be considered, but denying that the case was moot. This Court entered an order on January 30, 2017 granting the motion to consider post-judgment facts with regard to facts 1, 2, and 3 and reserving judgment on the final fact, as well as Appellees' motion to dismiss the appeal as moot.

### Analysis

Although Appellants raised several issues in their appellate briefs regarding the propriety of the trial court's decision to reverse approval of the Project, as an initial matter, we must first determine whether this case is rendered moot by the adoption of the Amended Ordinance and the expiration of the time period for filing a writ of certiorari to challenge the approval of the Project pursuant to the Amended Ordinance. Mootness is a doctrine of justiciability. *Norma Faye Pyles Lynch Family Purpose LLC v. Putnam Cty.*, 301 S.W.3d 196, 203 (Tenn. 2009). Justiciability, in turn, is a doctrine by which courts determine "whether a particular case presents a legal controversy." *Id.* As the Tennessee Supreme Court has explained:

A case must remain justiciable (remain a legal controversy) from the time it is filed until the moment of final appellate disposition. *State v. Ely*, 48 S.W.3d 710, 716 n. 3 (Tenn.2001); *Alliance for Native Am. Indian Rights, Inc. v. Nicely*, 182 S.W.3d at 338; 1 Ronald D. Rotunda & John E. Nowak, *Treatise on Constitutional Law* § 2.13(c)(ii), at 261 (4th ed. 2007)

(hereinafter "Treatise on Constitutional Law"). While the doctrines of standing and ripeness focus on the suit's birth, the doctrine of mootness focuses attention on the suit's death. 13B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper *Federal Practice and Procedure* § 3533.1, at 735–37. A moot case is one that has lost its justiciability either by court decision, acts of the parties, or some other reason occurring after commencement of the case. *West v. Vought Aircraft Indus., Inc.*, 256 S.W.3d at 625; *McCanless v. Klein*, 182 Tenn. at 637, 188 S.W.2d at 747; *McIntyre v. Traughber*, 884 S.W.2d at 137. A case will be considered moot if it no longer serves as a means to provide some sort of judicial relief to the prevailing party. *Knott v. Stewart County*, 185 Tenn. at 626, 207 S.W.2d at 338–39; *Bell v. Todd*, 206 S.W.3d 86, 96 (Tenn.Ct.App.2005); *Massengill v. Massengill*, 36 Tenn.App. 385, 388–89, 255 S.W.2d 1018, 1019 (1952).

*Norma Faye Pyles Lynch*, 301 S.W.3d at 203–04. Thus, a case may lose its justiciability and thereby become moot as the result of a court decision, acts of the parties, or some other event that occurs during the pendency of the case. *Id.* If a case no longer serves as a means to provide some sort of judicial relief to the prevailing party it will be considered moot. *Id.* In determining whether a case has been rendered moot, Tennessee courts consider several factors, including: "the reason that the case is alleged to be moot, the stage of the proceeding, the importance of the issue to the public, and the probability that the issue will recur." *Id.* at 204. Generally, a case rendered moot will nevertheless be decided on the merits in the following circumstances:

> (1) when the issue is of great public importance or affects the administration of justice, (2) when the challenged conduct is capable of repetition and of such short duration that it will evade judicial review, (3) when the primary subject of the dispute has become moot but collateral consequences to one of the parties remain, and (4) when the defendant voluntarily stops engaging in the challenged conduct.

*Id.* (footnotes omitted) (discussed in detail, *infra*).

## I.

In addition to these circumstances, the Planning Commission argues that this Court should decline to dismiss a case as moot when a jurisdictional issue is raised. In support of this argument, the Planning Commission cites this Court's Opinion in *State ex rel. Baker v. Turner*, 562 S.W.2d 435 (Tenn. Ct. App. 1977). In *Baker*, the appellee mother was awarded custody of the child in the parties' divorce with paternal grandfather having visitation. *Id.* at 436. Thereafter, the paternal grandfather filed a petition to have the child declared dependent and neglected. *Id.* The child was thereafter placed in foster care and the mother filed a petition for habeas corpus in chancery court. *Id.* The chancery

court returned custody of the child to mother and entered an injunction preventing any further proceedings regarding the child without permission of the chancery court, which injunction applied not only to the parties, but also to the Tennessee Department of Children's Services ("DCS") and employees of the juvenile court. *Id.* at 436–37. The chancery court later entered several orders regarding child support and dissolved the injunction as to the juvenile court employees and DCS. *Id.* at 437. The juvenile court and DCS nevertheless appealed the chancery court's issuance of the injunction, arguing that the juvenile court retained jurisdiction to adjudicate a dependency and neglect action notwithstanding that custody decision had been made by another court relevant to a divorce. *Id.* Because the injunction had been dissolved, the mother filed a motion to dismiss on the basis of mootness. *Id.* A majority of this Court concluded that the trial court's subject matter jurisdiction to enter the disputed injunction remained a justiciable issue notwithstanding the dissolution of the injunction. *Id.* In reaching this decision, the majority concluded that "the crucial question presented is whether the juvenile court has jurisdiction to hear and determine the petition charging that the child is dependent and neglected." As such, the Court of Appeals proceeded to analyze that question.

A lone judge dissented from the court's opinion, determining instead that the appeal was moot. *Id.* at 438 (Nearn, J., dissenting). Judge Nearn explained his concern as follows: "[T]he decree complained of is the one which enjoined employees of the Juvenile Court and of the Tennessee Department of Human Services from proceeding. That injunction was dissolved by the Chancellor. Why should this Court consider the efficacy of the injunction when it no longer exists and no one is affected by it?" *Id.* As such, Judge Nearn concluded that no justiciable issue remained for the court's consideration. *Id.* Despite Judge Nearn's dissent, the Tennessee Supreme Court denied permission to appeal this Court's decision in *Baker*. *Id.* at 435 (noting that permission to appeal was denied by the Tennessee Supreme Court on February 13, 1978).

Appellees generally argue that a jurisdictional issue likewise must be addressed in this case as an initial matter. Specifically, the Power System appears to argue that the plain language of Tennessee Code Annotated section 13-4-104 provides the exclusive means of approval of the Project, thereby depriving the trial court of authority to consider Appellees' petition for a writ of certiorari to challenge the approval. Instead, the Power System argues that the Power System can simply "proceed with its Project," presumably without judicial review of the Project's legality.[2] Similarly, the Planning Commission argues that a writ of certiorari was not the proper vehicle for challenging the Planning Commission's decision in this case. Assuming arguendo that this issue must be determined notwithstanding Appellees' mootness argument, we cannot agree that the trial

---

[2] The Power System's argument on this issue was raised in its initial brief to this Court and therefore is not specifically addressed to the issue of mootness. Because the Power System's argument appears to implicate the trial court's subject matter jurisdiction to consider the approval of the Project under section 13-14-104, we have attempted to address this argument in the context of whether disputes regarding the trial court's subject matter jurisdiction remain justiciable.

court in this case lacked subject matter jurisdiction. We first consider the Power System's argument on this issue.

There is no dispute that the approval of the Project in this case was governed by section 13-4-104, which provides, in relevant part:

> Whenever the commission shall have adopted the plan of the municipality or any part thereof, then and thenceforth . . . no public utility, whether publicly or privately owned, shall be constructed or authorized in the municipality until and unless the location and extent thereof shall have been submitted to and approved by the planning commission; provided, that in case of disapproval, the commission shall communicate its reasons to the chief legislative body of the municipality, and such legislative body, by a vote of a majority of its membership, shall have the power to overrule such disapproval and, upon such overruling, such legislative body shall have the power to proceed; provided, that if the public . . . utility be one the authorization or financing of which does not, under the law governing the same, fall within the province of such legislative body, then the submission to the planning commission shall be by the state, county, district, municipal or other board or official having such jurisdiction, and the planning commission's disapproval may be overruled by such board by a majority vote of its membership, or by such official. . . . The failure of the commission to act within thirty (30) days from and after the date of official submission to it shall be deemed approval, unless a longer period be granted by such chief legislative body or other submitting board or official.

Thus, section 13-14-104 provides that the municipality's planning commission has the power to approve or disapprove the "location and extent" of a public utility within the municipality. *Id.* Where the planning commission disapproves of the utility, however, the planning commission must submit its reasoning to the "chief legislative body of the municipality," which may then overrule the decision of the planning commission. *Id.*

In this case, the Planning Commission approved the construction of the Project on December 8, 2015. The Power System therefore argues that it "satisfied its only statutory requirement under the State's planning and zoning laws and can proceed with its Project" without judicial review. We cannot agree. First, we note that the Power System cites no law wherein Tennessee courts have held that a decision to approve a public utility under section 13-14-104 may not be reviewed by the Tennessee courts exercising writ of certiorari jurisdiction. Indeed, other than a reference to the language of the statute, no law is cited by the Power System to support this interpretation. "[W]here a party fails to develop an argument in support of his or her contention or merely constructs a skeletal argument, the issue is waived." ***Sneed v. Bd. of Prof'l Responsibility of Supreme Court***, 301 S.W.3d 603, 615 (Tenn. 2010).

Moreover, such an interpretation of section 13-14-104 flies in the face of Tennessee's writ of certiorari law. Here, it appears that the Planning Commission argues that because section 13-14-104 does not expressly provide for judicial review, such is not available. On the contrary, the Tennessee writ of certiorari statute expressly provides that: "Anyone who may be aggrieved by any final order or judgment of any board or commission functioning under the laws of this state may have the order or judgment reviewed by the courts, **where not otherwise specifically provided**, in the manner provided by this chapter." Tenn. Code Ann. § 27-9-101 (emphasis added). Thus, section 27-9-101 contemplates writ of certiorari review only where review is not expressly provided for otherwise by statute. The lack of express review language contained in section 13-14-104 is therefore not fatal to the trial court's jurisdiction in this case.

The Planning Commission next argues that its decision to approve the Project was not the type of "final order or judgment" required to confer writ of certiorari jurisdiction. Rather, the Planning Commission argues that its decision was merely a "recommendation" that is not reviewable by writ of certiorari, citing *Walker v. Metro. Bd. Of Parks & Recreation*, No. M2007-01701-COA-R3-CV, 2009 WL 5178435 (Tenn. Ct. App. Dec. 30, 2009). *Walker* involved a number of complex issues, one of which questioned whether the trial court had writ of certiorari jurisdiction to review the recommendation of a park board to enter into a contract regarding the use of a park. *Id.* at *3. The Court of Appeals ultimately determined that this decision was not reviewable under the writ of certiorari framework.

In reaching this decision, this Court first discussed the distinctions between petitions for writ of certiorari and declaratory judgment actions:

> Actions for certiorari and those for declaratory judgment are distinct forms of action to which a petitioner may have recourse, depending on the nature of the decision maker involved or of the governmental action from which the petitioner seeks relief. An action for certiorari is the proper remedy for a party aggrieved by the final order or judgment of an administrative body which has acted in a judicial or a quasi-judicial capacity to apply existing law to the facts of a particular case. Tenn. Code Ann. § 27-9-101 *et seq.*; *McCallen v. City of Memphis*, 786 S.W.2d at 638; *Fallin v. Knox County Bd. of Commissioners*, 656 S.W.2d at 342.
>
> The distinction between declaratory judgment actions and those brought as common law writ of certiorari is that "determinations . . . [that] are administrative determinations, judicial or quasi-judicial in nature, and are accompanied by a record of the evidence produced and the proceedings had in a particular case" are reviewable by certiorari, "whereas, the enactment of ordinances or resolutions, creating or amending zoning regulations, is a legislative, rather than an administrative, action and is not ordinarily accompanied by a record of the evidence, as is the case of an

administrative hearing." ***Fallin v. Knox County Bd. of Commissioners***, 656 S.W.2d at 342-43. Legislative actions are not reviewable by common law writ of certiorari. ***Id.*** The test for determining whether the governmental action is legislative or administrative, also called quasi-judicial is whether it "makes new laws or executes one already in existence." ***Moore & Associates, Inc. v. West***, 246 S.W.3d 569, 575 (Tenn. Ct. App. 2005) (quoting ***McCallen v. City of Memphis***, 786 S.W.2d at 640).

*Walker*, 2009 WL 5178435, at *8. Importantly, this Court also noted that section 27-9-101 "clearly limit[s] judicial review of actions by administrative bodies to final orders or judgments. Accordingly, this court has construed [section] 27-9-101 to mean that actions by boards or commissions that are not final orders or judgments are not subject to judicial review under the common law writ of certiorari." ***Id.*** at *9 (citing ***State Dept. of Commerce v. FirstTrust***, 931 S.W.2d 226, 228-229 (Tenn. Ct. App. 1996) (holding that a subpoena duces tecum issued in conjunction with an order of investigation does not amount to a final order subject to judicial review); ***Isom v. Knox County Retirement & Pension Board and Knox County, Tennessee***, No. 03A01-9708-CH-00333, 1998 WL 136556, at *1 (Tenn. Ct. App. March 27, 1998) (dismissing the common law writ of certiorari action since no final order or judgment by the board had been entered)). Finally, this Court noted that to qualify for review by writ of certiorari, "a board's decision must be the result of its exercise of judicial functions[.]"*Walker*, 2009 WL 5178435, at *9 (citing Tenn. Code Ann. § 27-8-101 ("The writ of certiorari may be granted whenever authorized by law, and also in all cases where an inferior tribunal, board, or officer **exercising judicial functions** has exceeded the jurisdiction conferred, or is acting illegally, when, in the judgment of the court, there is no other plain, speedy, or adequate remedy.") (emphasis added)).

Based upon these rules, this Court determined that the action by the parks board was not reviewable by writ of certiorari. First, we noted that the parks board did not have the authority to approve or disapprove the contract regarding the park. ***Walker***, 2009 WL 5178435, at *10. Rather, the ultimate decision was to be made by the Metropolitan Council in that case. ***Id.*** Because the parks board did not have ultimate decision making authority, its decision was merely a recommendation requiring further legislative action, rather than a final order or judgment as required by section 27-9-101. ***Id.*** (*citing* ***Dalton v. Spencer***, 511 U.S. 462, 114 S.Ct. 1719, 128 L.Ed.2d 497 (1994) (holding that a recommendation by an administrative body requiring further executive or legislative action is not a final order or judgment); ***Public Citizen v. Dept. of Health and Human Services***, 795 F.Supp. 1212, 1221-1222 (D.D.C. 1992) (same)); ***Outgamie County v. Smith***, 38 Wis.2d 24, 155 N.W.2d 639, 644-645 (Wis. 1968) (same). Finally, this Court noted that the decision by the parks board was "simply not the kind of administrative decision that is subject to judicial review under the common law writ of certiorari." ***Walker***, 2009 WL 5178435, at *10. In reaching this decision, we noted that the parks

board's decision was "not the product of a judicial or quasi-judicial proceeding" and did not implicate the exercise of a judicial function, but was merely a policy decision not subject to writ of certiorari review. As such, this Court held that the trial court correctly dismissed the writ of certiorari action filed to challenge the recommendation of the parks board.

Despite the Planning Commission's argument otherwise, the same is not true in this case. First, we note that this Court has previously held that the decision of a planning commission to approve the proposed use of real property involves a quasi-judicial function subject to writ of certiorari review. *See **B & B Enterprises of Wilson Co., LLC v. City of Lebanon***, No. M2003-00267-COA-R3-CV, 2004 WL 2916141, at *3 (Tenn. Ct. App. Dec. 16, 2004) (citing ***Reddoch v. Smith***, 214 Tenn. 213, 222, 379 S.W.2d 641, 645 (Tenn. 1964); ***Lafferty v. City of Winchester***, 46 S.W.3d 752, 758 (Tenn. Ct. App. 2000); ***Burson & Simpson Lodge Devs., Inc. v. Metropolitan Gov't***, No. 01A01-9805-CH-00249, 1999 WL 114257, at *2-3 (Tenn. Ct. App. Mar. 5, 1999)) ("Planning commissions, like other boards and commissions of local government, are performing a quasi-judicial function when they review a proposed use of a particular tract of real property."). Indeed, this Court has previously allowed a writ of certiorari petition challenging a decision implicating approval under section 13-14-104. *See **CK Dev., LLC v. Town of Nolensville***, No. M2010-00633-COA-R3-CV, 2012 WL 38287, at *6 (Tenn. Ct. App. Jan. 6, 2012) ("The decision of whether to grant a building permit, for example, is an administrative act, even if made by a legislative body," and the decision is therefore amenable to writ of certiorari review); ***Roten v. City of Spring Hill***, No. M2008-02087-COA-R3-CV, 2009 WL 2632778, at *8 (Tenn. Ct. App. Aug. 26, 2009) (allowing a writ of certiorari action to determine whether a planning commission had authority to approve a site plan under section 13-14-104); ***Whittemore v. Brentwood Planning Comm'n, City of Brentwood***, 835 S.W.2d 11, 15 (Tenn. Ct. App. 1992) (allowing a direct challenge in the chancery court to the approval of a proposed land use under section 13-14-104 and holding that the decision was not reviewable by the board of zoning appeals). Thus, unlike in ***Walker***, the Planning Commission's decision in this case is certainly "the kind of administrative decision" that has been historically subject to judicial review. ***Walker***, 2009 WL 5178435, at *10. Indeed, the dispute in this case involved specifically whether the zoning ordinance was applicable to the Project and whether, if applicable, the zoning ordinance prevented the construction of the Project—"i.e. applying the facts of the matter before the board to an ordinance or other legal rule"—the very type of decision this Court held was subject to writ of certiorari review in ***Walker***. ***Walker***, 2009 WL 5178435, at *10

We also note that the Planning Commission's decision in this case is a final decision by the agency tasked with making a decision under section 13-14-104. As Appellants point out in their briefs, although section 13-14-104 contains two "overruling provisions," neither was triggered in this case. Rather, the legislative body's authority to overrule the decision of a planning commission under section 13-14-104 is only

prompted where a planning commission denies a proposed project. In this case, the Planning Commission approved the Project and section 13-14-104 provides no further review of that decision by the legislative body. *See generally* Tenn. Code Ann. § 13-14-104. As such, the Planning Commission's decision was not merely a recommendation, but a final agency decision, as required by Tennessee Code Annotated section 27-9-101. Because the Planning Commission's decision constituted a final agency decision involving a quasi-judicial function, the Planning Commission's approval of the Project in this case was subject to review by writ of certiorari.

## II.

Having determined the jurisdictional issue in favor of both the trial court's and this Court's jurisdiction, we return to the issue of mootness. As previously discussed, a case becomes moot where it no longer serves to offer relief to the prevailing party. *Norma Faye Pyles Lynch*, 301 S.W.3d at 203–04. Here, Appellees assert that given the approval of the Project under the Amended Ordinance, there is no relief that may be had to Appellees should they prevail. We agree. Here, the purpose of Appellees' writ of certiorari action was to prevent the Power System from constructing the Project on Appellees' adjoining property. Specifically, Appellee attempted to thwart the Power System's effort by arguing that the applicable zoning ordinance was violated by the Project. The trial court thereafter agreed with Appellees and halted the Project. The parties agree, however, that events have taken place since the trial court's decision that have an effect on this case.

In particular, the Mount Pleasant City Commission passed the Amended Ordinance on August 23, 2016, and the Project was thereafter approved by the Planning Commission under the Amended Ordinance on September 13, 2016. Construction of the Project has now begun. Furthermore, the parties do not dispute that Appellees have not filed a timely writ of certiorari to challenge the approval of the Project under the Amended Ordinance.[3] Because we have determined that writ of certiorari is the proper vehicle for challenging the Planning Commission's decision to approve the Project under section 13-14-104,[4] we agree with Appellees that this case no longer serves to offer meaningful relief to Appellee should it prevail.

Here, the purpose of Appellees' action was to prevent construction of the Project, an effort in which Appellees have ultimately not prevailed. A similar circumstance occurred in *Fisher v. Rutherford Cty. Reg'l Planning Comm'n*, No. M2012-01397-COA-R3-CV, 2013 WL 2382300 (Tenn. Ct. App. May 29, 2013). In *Fisher*, the

---

[3] Accordingly, we grant Appellees' request to consider post-judgment facts regarding sentence 4 solely with regard to the timely filing of a writ of certiorari regarding the approval of the Project under the Amended Ordinance. We deny the remainder of Appellees' motion to consider post-judgment facts.

[4] Although a declaratory judgment may conceivably be filed to challenge the Amended Ordinance, no party has cited any law to suggest that such an action would have any effect on the approval of the Project where it was not timely challenged by a writ of certiorari.

petitioner filed a writ of certiorari to prevent the construction of mosque. By the time the appeal was heard, however, the mosque had been built and was in operation. As such, "the principal judicial relief sought by the plaintiffs—to stop the construction of the mosque—[was] no longer available[.]" *Id.* at *2. Accordingly, this Court held that the action was rendered moot. *Id.* (exercising discretion to proceed to the merits after determining that a single issue involved "great public interest"). Based upon the approval of the Project under the Amended Ordinance and Appellees' failure to timely challenge the approval via a petition for a writ of certiorari, we must likewise conclude that this case no longer serves to provide any meaningful relief to Appellees.

The Power System argues that even assuming that no relief may be available to Appellees should they prevail, meaningful relief is still available to the Power System. Specifically, the Power System argues that it is entitled to damages based upon the trial court's erroneous decision to grant a writ of supersedeas without requiring Appellees to post a bond, as required by Tennessee Code Annotated section 27-9-106. We cannot agree, however, that such relief is available to the Power System. Rather, after a thorough review of the record in the trial court, we can locate no request for damages made by the Power System. While the Power System asked that the writ of supersedeas be dissolved or an appropriate bond in the amount over $1 million be required, the Power System simply did not include in any of its filings before the trial court a request for damages due to the allegedly wrongful issuance of the writ of supersedeas. It has generally been held that "'issues raised for the first time on appeal are waived.'" *Dye v. Witco Corp.*, 216 S.W.3d 317, 321 (Tenn. 2007) (quoting *Black v. Blount*, 938 S.W.2d 394, 403 (Tenn. 1996)). Here, the Power System's failure to seek damages was noted by Appellees in their pre-trial brief. Despite this clear notice, the Power System failed to amend its pleading to specifically request damages. As such, their request for damages is waived and provides no meaningful relief to the Power System in this case. The issue of damages related to the issuance of the writ of supersedeas is therefore not a bar to the application of the mootness doctrine in this case.

The Power System also argues that this Court should proceed to determine whether the zoning ordinance was originally applicable to the Project, notwithstanding the later amendment of the applicable ordinance and the approval of the Project. Specifically, the Power System suggests that this Court should offer "guidance as to how to proceed with future public utility projects." We cannot agree. Here, there can be no dispute that the ordinance at issue was amended to clarify that public utilities are not subject to the zoning requirements applicable to other projects; the Project was subsequently approved under this Amended Ordinance. As such, were this Court to analyze the issue of the zoning ordinance's applicability to "future public utility projects," it would merely be rendering an impermissible advisory opinion. As our supreme court has explained:

> Courts may not issue advisory rulings. *See* ***Super Flea Mkt. of Chattanooga, Inc. v. Olsen***, 677 S.W.2d 449, 451 (Tenn. 1984). "However

convenient or desirable for either party that the questions mooted in the case be authoritatively settled for future guidance, the court is not justified in violating fundamental principles of judicial procedure to gratify that desire." *State ex rel. Lewis*, 347 S.W.2d at 48 (quoting *S. Pac. Co.* [*v. Eshelman*], 227 F. [928,] 932 [(N.D.Cal.1914)]).

*State v. Rodgers*, 235 S.W.3d 92, 97 (Tenn. 2007) (noting certain exceptions corresponding to the factors outlined in *Norma Faye Pyles Lynch*). Here, the Power System's request that this Court resolve future controversies is simply not sufficient to show a "'genuine and existing controversy, calling for present adjudication.'" *Rodgers*, 235 S.W.3d at 98 (quoting *State ex rel. Lewis*, 347 S.W.2d at 48). Accordingly, this case has been rendered moot by the approval of the Project under the Amended Ordinance.

### III.

As previously discussed, once a case has been rendered moot, Tennessee courts will consider whether a number of exceptions apply that would nonetheless justify the court's continued involvement. As such, we have been directed by the Tennessee Supreme Court to "consider whether to exercise [our] discretion to apply one of the recognized exceptions to the mootness doctrine." *Hooker v. Haslam*, 437 S.W.3d 409, 417 (Tenn. 2014). According to our supreme court:

Those exceptions, applicable in the court's discretion, may arise:

(1) when the issue is of great public importance or affects the administration of justice;

(2) when the challenged conduct is capable of repetition and is of such short duration that it will evade judicial review;

(3) when the primary subject of the dispute has become moot but collateral consequences to one of the parties remain; and

(4) when the defendant voluntarily stops engaging in the conduct.

Id. at 417–18 (citing *Norma Faye Pyles Lynch*, 301 S.W.3d at 204).

We begin first with the public interest exception, specifically whether the issue is one "of great public importance or [that] affects the administration of justice[.]" *Norma Faye Pyles Lynch*, 301 S.W.3d at 204. This exception is available only "under 'exceptional circumstances where the public interest clearly appears.'" *Id.* at 210 (quoting *Dockery v. Dockery*, 559 S.W.2d 952, 955 (Tenn. Ct. App. 1977)). In order to determine this issue, we must consider the following factors:

(1) the public interest exception should not be invoked in cases affecting only private rights and claims personal to the parties; (2) the public interest

- 12 -

exception should be invoked only with regard to "issues of great importance to the public and the administration of justice"; (3) the public interest exception should not be invoked if the issue is unlikely to arise in the future; and (4) the public interest exception should not be invoked if the record is inadequate or if the issue has not been effectively addressed in the earlier proceedings.

*Norma Faye Pyles Lynch*, 301 S.W.3d at 2010–11 (footnote omitted). Where the above factors do not exclude use of the public interest exception, we are directed to "balance the interests of the parties [and] the public . . . to determine whether the issue, albeit moot, should not be dismissed." *Hooker*, 437 S.W.3d at 418 (citing *Norma Faye Pyles Lynch*, 301 S.W.3d at 2010–11). In performing this balancing test, we may consider, *inter alia*, the assistance a decision on the merits will provide to public officials, the likelihood the issue will recur, the urgency in resolving the issue, the costs of litigating the issue again, as well as whether the issue is purely legal, or involves factual disputes. *Hooker*, 437 S.W.3d at 418 (citing *Norma Faye Pyles Lynch*, 301 S.W.3d at 2010–11).

The Tennessee Supreme Court has previously concluded that questions of condemnation of private property in which a constitutional right is involved and the constitutionality of non-attorney judges presiding over criminal matters involved matters of such great public importance as to justify departing from the mootness doctrine. *See, e.g., Norma Faye Pyles Lynch*, 301 S.W.3d at 210 (involving condemnation); *City of White House v. Whitley*, 979 S.W.2d 262, 265 (Tenn. 1998) (involving the judges that preside over criminal matters). In contrast, the Tennessee Supreme Court has indicated that no great public importance has been shown where the outcome of the litigation would have no far-reaching consequences and the case was not a class action, even where the overarching question was "of immense public importance." *See Hooker*, 437 S.W.3d at 418. In a similar circumstance, this Court has noted that even though disputes concerning elections involve issues of public concern, an election contest is largely a personal action meant to vindicate the rights of the petitioner because it does not "affect a large segment of the voting public." *LaRouche v. Crowell*, 709 S.W.2d 585, 587–88 (Tenn. Ct. App. 1985); *see also Hatcher v. Chairman*, 341 S.W.3d 258, 262 (Tenn. Ct. App. 2009) (declining to apply the public interest exception where the claim was "one primarily involving personal rights rather than rights of great public concern"). Where the interests of the public at large are represented by the suit, however, this Court has found that the public interest exception is applicable. *See City of Chattanooga v. Tennessee Regulatory Auth.*, No. M2008-01733-COA-R12-CV, 2010 WL 2867128, at *8 (Tenn. Ct. App. July 21, 2010) (involving a suit wherein the City of Chattanooga intervened in an administrative hearing for the purpose of objecting to a proposed rate hike on its residents); *see also Fisher*, 2013 WL 2382300 (finding a "great public interest" in addressing questions regarding the notice to the public required by the Open Meetings Act).

- 13 -

First, we note that unlike many of the cases in which this exception has been applied, the dispute in this case does not involve any constitutional rights. Moreover, by its very nature, the type of claim raised by Appellees in this case is intended not to vindicate the rights of the public as a whole, but only to protect the rights of a person "aggrieved by any final order or judgment of any board or commission[.]" Tenn. Code Ann. § 27-9-101. This Court has held that "to be 'aggrieved' a party must at least be able to show 'a special interest in the agency's final decision or that it is subject to a special injury not common to the public generally.'" **Roten**, 2009 WL 2632778, at *3 (quoting **Wood v. Metro. Nashville & Davidson Cty Gov't**, 196 S.W.3d 152 (Tenn. Ct. App. 2005)). As such, the claim in this case involves only a dispute between interested parties as to the appropriateness of the Project at issue. Simply put, the interests of the public at large are not at issue in this case, nor does this case involve the type of "exceptional circumstances" previously held to justify application of the public interest exception. Because we conclude that this case largely involves "only private rights and claims personal to the parties," and does not implicate matters of great public importance, we conclude that the public interest exception is inapplicable.[5]

Likewise, the dispute in this case is not "capable of repetition and is of such short duration that it will evade judicial review." **Hooker**, 437 S.W.3d at 417. This Court has held that in order to invoke this exception: "A mere theoretical possibility that an act might reoccur is not sufficient to invoke the exception. Rather, there must be a reasonable expectation or a demonstrated probability that the same controversy will recur involving the same complaining party." **City of Chattanooga v. Tennessee Regulatory Auth.**, No. M2008-01733-COA-R12-CV, 2010 WL 2867128, at *5 (Tenn. Ct. App. July 21, 2010). Here, given the Planning Commission's approval of the Project under the Amended Ordinance and Appellees' decision to forgo a challenge to the approval by way of a timely petition for a writ of certiorari, it does not appear any future attempts to gain approval of this particular Project are necessary. Even considering the more general question trumpeted by Appellants in this case, the applicability of local zoning ordinances to all projects approved under Tennessee Code Annotated section 13-14-104 is simply not the type of claim that will evade judicial review. Indeed, as previously discussed, the writ of certiorari procedure, coupled with the writ of supersedeas, provides an appropriate means of challenging the approval of a public utility pursuant to Tennessee Code Annotated section 13-14-104 and indeed has been utilized to challenge similar decisions historically.

Because issues of subject matter jurisdiction have been resolved and the Power System's request for damages is waived, it also does not appear that collateral consequences are present that require this Court's review. **Hooker**, 437 S.W.3d at 418; see also **Norma Faye Pyles Lynch**, 301 S.W.3d at 204 (citing only cases in which the collateral consequences stemmed from criminal convictions). Indeed, the Tennessee

---

[5] We therefore need not complete the balancing test outlined in **Haslam**. See **Hooker**, 437 S.W.3d at 418 (citing **Norma Faye Pyles Lynch**, 301 S.W.3d at 210–11).

- 14 -

Supreme Court has held that this exception applies only to "prejudicial collateral consequences," including "the continued effect of an order that has expired or is invalid." *Hudson v. Hudson*, 328 S.W.3d 863, 866 (Tenn. 2010). It is unclear how Appellants may be prejudiced by the result in this case as they ultimately prevailed in their effort to construct the Project.

Finally, we note that the mootness in this case is not the result of the defendant's voluntary cessation of the challenged conduct. *Hooker*, 437 S.W.3d at 418. Here, Appellants, as defendants to this writ of certiorari action, did not render this case moot by discontinuing their conduct. Rather, this case was rendered moot when Appellants obtained approval of the Project under an Amended Ordinance specifically exempting public utilities from the zoning ordinance and no timely challenge was made to that decision. While the Power System argues that Appellees have voluntary stopped pursuing this appeal, we note that the Tennessee Supreme Court made clear that it is the defendant's voluntary cessation of challenged conduct that is at issue with regard to this exception. *See* **Hooker**, 437 S.W.3d at 418 (holding an exception exists "when the **defendant** voluntarily stops engaging in the conduct") (emphasis added). Indeed, the Tennessee Supreme Court discussed this doctrine in the context of "the voluntary cessation of illegal conduct." *Norma Faye Pyles Lynch*, 301 S.W.3d at 205. The only illegal conduct alleged to have occurred in this case involved the improper approval of the Project. As such, Appellees had committed no alleged "illegal conduct," the cessation of which would result in the case being rendered moot.

Based on the foregoing, we conclude that this case had been rendered moot by events occurring after the judgment in this case and no exceptions are present that persuade this Court to exercise our discretion to consider this case regardless of its mootness. Consequently, we grant Appellees' motion to dismiss this appeal as moot. Costs of this appeal are taxed one-half to Appellants, and their surety, and one-half to Appellees, for all of which execution may issue, if necessary.

_____
J. STEVEN STAFFORD, JUDGE

- 15 -